# EXHIBIT A



Jason R. Flanders
Aqua Terra Aeris Law Group
4030 Martin Luther King Jr. Way
Oakland, CA 94609
(916) 202-3018
jrf@atalawgroup.com

June 22, 2020

**VIA CERTIFIED MAIL**

Cosumnes Corporation dba Murieta Equestrian Center
Attn: Carol Anderson Ward, CEO
7200 Lone Pine Dr., Suite 200
Rancho Murieta, CA 95683

**Re:    Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act and Resource Conservation and Recovery Act**

Dear Ms. Ward:

This letter provides notice to Cosumnes Corporation doing business as Murieta Equestrian Center ("MEC") of violations of the federal Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA") occurring at its facility located at 7200 Lone Pine Drive, Rancho Murieta, California (the "Facility").  California Coastkeeper Alliance (the "Alliance") intends to file suit pursuant to section 505(a) of CWA (33 U.S.C. § 1365(a)), and section 7002(a)(1)(B) of RCRA (42 U.S.C. § 6972(a)(1)(B)), for the violations detailed in this letter.

The Alliance is informed and believes that MEC is a Concentrated Animal Feed Operation ("CAFO"), which is a point source under the CWA. 33 U.S.C. § 1362.  CAFOs may not discharge pollutants to waters of the United States except in compliance with a permit issued pursuant to § 402 of the CWA, 33 U.S.C. § 1342 ("NPDES permit").  33 U.S.C. § 1311(a).  The Alliance is informed and believes that MEC has not obtained an NPDES permit yet routinely discharges pollutants, including stormwater and processed wastewater, into the Cosumnes River.  Each day that pollutants are discharged constitutes a separate violation of the CWA.  Prior to initiating a lawsuit alleging violations of the CWA, a plaintiff must give sixty-days' notice of their intent to sue to the discharger, as well as to state and federal agencies. 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. § 135.2(a)(1).

The Alliance is also notifying MEC that its handling and storage of solid waste, such as manure, at the Facility may cause an imminent and substantial endangerment to human health



and/or the environment, in violation of RCRA section 7002(a)(1)(B) (42 U.S.C. § 6972(a)(1)(B)). RCRA requires that ninety (90) days prior to initiating a civil action against any alleged violator, a plaintiff must give notice of their intent to file suit to the person alleged to be in violation, as well as to state and federal agencies. 42 U.S.C. § 6972(b)(2)(A).

This letter ("Notice Letter") provides notice to MEC of violations of the CWA and RCRA occurring at the Facility.  After sixty (60) days from the date of this letter, the Alliance intends to file a complaint alleging the violations of the CWA that are occurring at MEC, and after ninety (90) days from the date of this letter, the Alliance intends to file a complaint alleging the violations of RCRA that are occurring at the Facility.  The CWA and RCRA are strict liability statutes to which few if any defenses may be available.

The Alliance is open to discussing ways to resolve the issues at the Facility prior to the initiation of litigation.  We encourage you to contact us as soon as possible to attempt to resolve the issues detailed herein.

## 1. THE NOTIFYING PARTY: CALIFORNIA COASTKEEPER ALLIANCE

California Coastkeeper Alliance is an environmental group, organized as a non-profit corporation in accordance with the laws of the State of California. Using law, policy, and science, the Alliance advances statewide policies and programs for healthy and clean waters.  The Alliance works with local Waterkeepers to develop, implement, and defend policies that meet the needs of California's distinct communities and ecosystems.  Additionally, the Alliance actively seeks federal and state agency implementation of the CWA and, where necessary, initiates enforcement actions on behalf of itself and its members.  The Alliance's offices are located at 1100 11th Street, 3rd Floor, Sacramento, CA 95814.

The Alliance and its individual and organizational members have an interest in the preservation and use of waters statewide, including the Cosumnes River.  Specifically, the Alliance's members picnic, fish, hike, wade, bike, and enjoy the wildlife in and around these waters, including the Cosumnes River.  MEC's actions, in combination with the activities of other landowners adjacent to the Cosumnes River, result in numerous injuries to the Alliance's interests, such as: loss, destruction, or damage to wetlands and waterways; diminished aesthetic enjoyment; loss of open space and habitat for wildlife, including wading birds and federally protected species; degraded water quality; and diminished quality of life.  The ability of the Alliance's members to picnic, fish, hike, , wade, bike, and enjoy the wildlife in and around these waters, and to use and enjoy the Cosumnes River and downstream waters, is harmed by MEC's violations of law.



## 2. PERSON RESPONSIBLE FOR THE VIOLATIONS: MURIETA EQUESTRIAN CENTER

This Notice Letter is being sent to the Cosumnes Corporation doing business as Murieta Equestrian Center as the owner and/or operator of the Facility and is the party responsible under the CWA and RCRA for the violations alleged herein. Cosumnes Corporation is a corporation incorporated under the laws of the State of California. It is located at 7200 Lone Pine Drive, Suite 200, Rancho Murieta, CA 95683.

## 3. THE RECEIVING WATER: COSUMNES RIVER

Based on the information available to the Alliance, polluted stormwater and process wastewater from the Facility discharges to the Cosumnes River, a water of the United States that is protected by the CWA. The Cosumnes River's designated beneficial uses include municipal and domestic supply, agriculture, cold and warm freshwater habitat, cold and warm migration, fish spawning, water contact recreation, non-water contact recreation, and wildlife habitat.[1] The major source of the Rancho Murieta domestic water system is directly from the Cosumnes River. The Cosumnes River is listed as impaired for indicator bacteria, toxicity, and invasive species under section 303(d) of the Clean Water Act.[2] The American River Integrated Regional Water Management Plan states that the water quality of the Cosumnes River is also negatively impacted by levels of nitrogen, phosphorus, and suspended sediments.[3]

Downstream of Rancho Murieta and the Facility, the Cosumnes River "support[s] one of the biologically richest regions in California's Central Valley."[4] Below Highway 99 it enters the nearly 50,000-acre Cosumnes River Preserve, which include some of the largest remaining wetlands and riparian areas in the Central Valley. "Marshes and grasslands provide wintering grounds for tens of thousands of migrating birds, songbirds and raptors, including sandhill crane, tundra swan, and great blue heron. The river is home to a number of resident, fall-run native fishes . . .."[5]

---

[1] Central Valley Regional Water Control Board, The Water Quality Control Plan (Basin Plan), Fifth Edition, Revised May 2018, at Table 2-1, page 2-11, *available at* https://www.waterboards.ca.gov/centralvalley/water_issues/basin_plans/sacsjr_201805.pdf

[2] California State Water Resources Control Board, Final 2014/2016 California Integrated Report (Clean Water Act Section 303(d) List / 305(b) Report), *available at* https://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2014_2016.shtml (Cosumnes River, lower below Michigan Bar).

[3] Regional Water Authority, American River Integrated Regional Water Management Plan 2018 ("2018 IRWMP"), at p. 2-60, *available at* https://rwah2o.org/wp-content/uploads/2018/04/03-Section-2_Update-2018_Public-Draft-sm2.compressed.pdf

[4] *Id.*, p. 2-61.

[5] *Id.*



## 4. LEGAL BACKGROUND

### A. CWA Permit Requirements for CAFOs

*a. Definition of a CAFO*

Section 301 of the CWA (33 U.S.C. § 1311(a)) prohibits the discharge of pollutants into waters of the United States by any person from a point source without a permit. The CWA expressly defines concentrated animal feeding operations ("CAFOs") as a type of point source. 33 U.S.C § 1362(14). Thus, any CAFO that discharges pollutants to a water of the U.S. must have a permit to do so.

To qualify as a CAFO, a facility must first meet the definition of an Animal Feeding Operation ("AFO"). An AFO is defined as:

> a lot or facility (other than an aquatic animal production facility) where the following conditions are met:
>
> (i) Animals (other than aquatic animals) have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period, and
>
> (ii) Crops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility.

40 C.F.R. § 122.23. The Environmental Protection Agency ("EPA") considers an animal to be at the facility for a full day if it is at the facility for any portion of a day.[6] Additionally, the 12-month period is any 12-month period and need not correspond with a calendar year.[7] EPA further clarifies that crops, vegetation, forage growth, or post-harvest residues do not include incidental growth on small portions of the confinement area.[8]

Second, a facility must confine a certain number of animals to be classified as a CAFO. For horses, a large CAFO must confine 500 horses or more for the facility for at least forty-five (45) days per twelve-month period. 40 C.F.R. § 122.23(4)(vi). A facility is a medium CAFO if it has 150-499 horses and it either: (1) discharges "into waters of the United States through a man-made ditch, flushing system, or other similar man-made device"; or (2) "[p]ollutants are discharged directly into waters of the United States which originate outside of and pass over, across, or through

---

[6] *NPDES Permit Writers' Manual far CAFOs.* https://www.epa.gov/sites/production/files/2015-08/documents/cafo_permitmanual_chapter2.pdf (accessed on January 9, 2019).

[7] *Id.*

[8] *Id.*



the facility or otherwise come into direct contact with the animals confined in the operation." 40 C.F.R. § 122.23(6).

*b. Permitting Requirements for CAFOs*

CAFOs must acquire a NPDES permit issued pursuant to CWA section 402 (33 U.S.C. § 1342) prior to discharging pollutants into a water of the United States. 40 C.F.R. § 122.23(f). Every discharge of a pollutant from a CAFO into waters of the United States *without* a permit is a violation of section 301 of the CWA (33 U.S.C. § 1311).

NPDES permittees must comply with technology-based effluent limitations that constitute the "Best Available Technology" ("BAT") and "Best Conventional Pollution Control Technology" ("BCT").[9] NPDES permittees must also comply with more stringent water quality-based effluent limitations when necessary to ensure that discharges do not cause or contribute to a violation of a water quality standard.

Federal regulations include specific requirements for CAFOs that discharge processed wastewater, including any stormwater or other water that comes into contact with manure or bedding and the water from the wash racks. 40 C.F.R. § 122.23.[10] Large horse CAFOs must retain (*i.e.*, not discharge) all of their process wastewater. 40 C.F.R. § 412.13(a). The discharge of process wastewater is permissible only when rainfall events cause an overflow from a facility designed to contain all process wastewater plus the runoff from a 25-year, 24-hour rainfall event. 40 C.F.R. § 412.13(6).

In addition, all permits authorizing the discharge of process wastewater must require implementation of a nutrient management plan (NMP) that, at a minimum, contains best management practices necessary to meet enumerated requirements and applicable effluent limitations and standards. 40 C.F.R. § 122.42(e)(1). Those enumerated requirements include: (1) manure and process wastewater storage; (2) management of mortalities; (3) diversion of clean

[9] The CWA required all point source dischargers to achieve effluent limitations based upon BAT for toxic and nonconventional pollutants and BCT for "conventional" pollutants by March 31, 1989. 33 U.S.C. § 1311(b); 40 C.F.R. § 125.3(a)(2)(ii)-(iii). Conventional pollutants are TSS, oil and grease, pH, biochemical oxygen demand ("BOD"), and fecal coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. *Id.*; 40 C.F.R. § 401.15.

[10] "Process wastewater means water directly or indirectly used in the operation of the AFO for any or all of the following: spillage or overflow from animal or poultry watering systems; washing, cleaning, or flushing pens, barns, manure pits, or other AFO facilities; direct contact swimming, washing, or spray cooling of animals; or dust control. Process wastewater also includes any water which comes into contact with any raw materials, products, or byproducts including manure, litter, feed, milk, eggs or bedding." 40 C.F.R. § 122.23.



water from the production area; (4) prevention of direct contact of confined animals to waters of the U.S.; (5) treatment systems specifically designed for appropriate chemical and contaminant management; (6) conservation practices; (7) protocols for testing manure, litter, process wastewater, and soil; (8) protocols for applying manure, litter, or process wastewater in accordance with the site-specific NMP; and (9) record keeping. The terms of the NMP are enforceable effluent limitations that must be included in the permit.

Stormwater discharges from large CAFOs are also subject to permitting requirements because they are defined as industrial activities. 40 C.F.R. § 122.26; California Industrial General Permit, Attachment A.1.[11] Thus, in California, a large CAFO must seek coverage under the Industrial General Permit for its stormwater discharges, unless those discharges are otherwise covered by another CWA permit. Every discharge of stormwater from an area of industrial activity at a CAFO into waters of the U.S. without industrial stormwater permit coverage is a violation of § 301 of the Clean Water Act, 33 U.S.C. § 1311.

The Industrial General Permit requires that a facility implement best management practices that meet BAT/BCT to control stormwater pollution. The Industrial General Permit also prohibits stormwater discharges that cause or contribute to a violation of water quality standards. In addition, the specific CAFO requirements listed above, such as BAT/BCT, retention of process wastewater, and an NMP that meets effluent limitations and standards, continue to apply.

**B. Legal Background of RCRA**

RCRA creates a framework for the proper management of solid waste. RCRA "is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996).

RCRA prohibits the disposal of solid waste, except at a sanitary landfill or hazardous waste disposal facility. 42 U.S.C. §§ 6945(a), 6903(14). "Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste . . . or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." *Id*. at § 6903(3). Under RCRA, the definition of "solid waste" is broad and includes "any garbage, refuse, . . . and other discarded material, including solid, liquid, semisolid or contained gaseous material resulting from . . . agricultural operations . . . ." 42 U.S.C. § 6903(27). Manure has been held to be a RCRA "solid waste." *See Cmty. Ass'n for Restoration of the Env't v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1220 (E.D. Wash. 2015).

---

[11] *Available at* https://www.waterboards.ca.gov/water_issues/programs/stormwater/igp_20140057dwq.html



RCRA also creates a private cause of action against a person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Liability is established when "(1) a person has 'contributed' or 'is contributing' to, (2) the 'past or present handling, storage, treatment, transportation, or disposal of' any 'solid or hazardous waste,' and (3) the waste in question 'may present an imminent and substantial endangerment to health or the environment.'" *Cow Palace*, 80 F. Supp. 3d at 1218. Contaminated stormwater runoff may be subject to RCRA. *See Ecological Rights Foundation v. Pacific Gas and Electric Co.*, 874 F.3d 1083, 1094-1101 (9th Cir. 2017).

## 5. MEC'S FAILURE TO OBTAIN AN NPDES PERMIT

### A. The Facility is a Large or Medium CAFO

The Facility meets the regulatory definition of a large CAFO. 40 C.F.R. § 122.23(4)(vi). Based on information available to the Alliance, the Facility boards at least 500 horses for 45-days each 12-month period for the last five years. According to the Western States Horse Expo's website, "Murieta Equestrian Facility is the largest equestrian facility in the State of California."[12] MEC hosts over 50 events annually with over 200,000 competitors and spectators. In 2019, for instance, MEC hosted 54 shows, each ranging from 1 to 10 days. MEC accommodates an average of 300 horse entrants per event and 15,000 entrants annually. The largest event featured 1,000 horses. MEC has 379 permanent stalls and has additional capacity to board 500 additional horses with portable stalls.[13] These facts indicate that the Facility is a large CAFO.

In the alternative, the Alliance alleges that the Facility is a medium CAFO. Upon information and belief, MEC satisfies the quantitative requirement that a medium horse CAFO maintain 150-499 horses for 45 days or more in a 12-month period. 40 C.F.R. § 122.23(6). In addition, a medium CAFO must discharge into waters of the United States. 40 C.F.R. § 122.23(6). As discussed below, based on information available to the Alliance, the Facility discharges pollutants into the Cosumnes River when water at the Facility flows through the stables, into drainage ditches and to the Cosumnes River.

### B. The Facility Discharges Pollutants into Waters of the United States

Horse CAFOs produce a substantial amount of pollutants including manure, bedding, and process wastewater. Such animal waste and process wastewater discharged from the Facility are and/or contain "pollutants," as defined in CWA § 502(6), 33 U.S.C. §1362(6). Like other horse

---

[12] https://horsexpo.com/venue/
[13] This information can be found on MEC's website *at* https://murietaequestriancenter.com/



CAFOs, the Facility generates a substantial amount of manure, bedding, process wastewater, trash, footing, and other pollutants.

The Alliance's investigation has shown that the Facility has been and continues to discharge pollutants, including process wastewater and stormwater, to the Cosumnes River. During rain events, rain falls onto the Facility and runs through active areas of the Facility, such as stables, arenas, storage areas, etc., towards drainage ditches or other stormwater conveyance systems that lead to the Cosumnes River. Stormwater comes into direct contact with manure and bedding from the stables. When the water discharges into the Cosumnes River, it carries pollutants such as phosphorus, nitrogen, trash, and bacteria. In addition, any discharges that occur as a result of applying process wastewater to land are discharges subject to NPDES permit requirements. 40 C.F.R. § 122.23(e). Coastkeeper Alliance alleges that all CWA violations alleged in this Notice Letter occurred each time stormwater or non-stormwater discharges from the Facility. Attachment A hereto sets forth the specific rain dates on which Coastkeeper Alliance alleges that such discharges have occurred.

The Facility also may discharge pollutants in dry weather. Process wastewater from horse wash stations may escape wash racks or other infrastructure and/or practices during dry weather, with pollutants eventually ending up in the Cosumnes River. The Alliance is informed and believes that there are various other discharges of pollutants not specifically mentioned herein for which MEC may be liable.

**C. The Facility Does Not Have NPDES Permit Coverage**

A CAFO must be covered by an NPDES permit at the time it discharges. 33 U.S.C. § 1311(a); 40 C.F.R. § 122.23(f). The Facility does not have the required NPDES permit coverage that would allow the Facility to discharge pollutants pursuant to § 402 of the CWA, 33 U.S.C. § 1342. Section 301 of the CWA, 33 U.S.C. § 1311, prohibits the discharge of a pollutant from a point source without a permit. The Alliance alleges that the Facility does not have permit coverage for any discharges of pollutants, including processed wastewater and stormwater, from the Facility, although it routinely discharges pollutants into the Cosumnes River.

**D. The Facility Is Not Complying with Effluent Limitations Applicable to CAFOs**

As explained above, the CWA requires that all point sources that discharge pollutants into waters of the United States achieve compliance with technology-based effluent limitations that constitute BAT and BCT. 33 U.S.C. § 1311(6). Specifically, regulations require that the large horse CAFOs retain all discharges of processed stormwater from the Facility. 40 C.F.R. § 412.13(a). Discharging process wastewater is permissible only when rainfall events cause an overflow of process wastewater from a facility designed, constructed, operated, and maintained to contain all process-generated wastewater plus the runoff from a 25-year, 24-hour rainfall event at



the location of the point source. *Id*. The Alliance is informed and believes, and thereon alleges, that the Facility is failing to meet technology-based effluent limits at the Facility.

The CWA also requires dischargers to comply with water-quality based effluent limitations that prohibit discharges that cause or contribute to violations of receiving water quality objectives.[14] Sample results from facilities similar to the Facility indicate discharges with levels of bacteria well-above applicable water quality objectives, specifically bacteria objectives. Manure is also known to contain high levels of phosphorus and nitrogen. The Cosumnes River exceeds water quality objectives (*i.e.*, is impaired) for several pollutants known to be present at the Facility and other similar horse facilities, including indicator bacteria and toxicity. Additional sources indicate that the water quality of the Cosumnes River is also impacted by high levels of nitrogen, phosphorus, and suspended sediments. Unpermitted discharges from the Facility, which include such pollutants, thus cause, and contribute to, the impairment of the Cosumnes River in violation of the CWA.

## 6. MEC'S ACTIONS PRESENT AN IMMINENT AND SUBSTANTIAL ENDANGERMENT IN VIOLATION OF RCRA

Based on the foregoing facts, MEC has contributed to the past and present storage and/or disposal of solid and hazardous wastes, namely horse manure, bedding, and related debris. These materials are "solid wastes" under RCRA. 42 U.S.C. § 6903(27) ("any…discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations . . ."). Based on information available to the Alliance, MEC's practice of storing and disposing of liquid and solid manure, bedding, and related debris may present an imminent and substantial endangerment to the health of nearby residents, the Alliance's members, and the environment. MEC's past and present waste disposal practices have also caused contamination to travel beyond the Facility's boundaries, in violation of RCRA's open dumping prohibitions.

## 7. CONCLUSION

In addition to the violations set forth above, this Notice Letter covers all violations of the CWA and RCRA by MEC as evidenced by information that becomes available to the Alliance after the date of this Notice Letter. The Alliance puts MEC on notice that it intends to include all violations of the CWA and RCRA in its federal citizen enforcement suit.

---

[14] Applicable water quality objectives can be found in Chapter 3 of the *Water Quality Control Plan for the Sacramento River Basin and San Joaquin River Basin,* available at https://www.waterboards.ca.gov/centralvalley/water_issues/basin_plans/sacsjr_201805.pdf (accessed on May 29, 2020).



Pursuant to § 309(d) of the CWA, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the CWA subjects the violator of a penalty of up to $37,500.00 per day per violation for all CWA violations after January 12, 2009 to November 2, 2015 and $55,800 per day per violation for violations that occurred after November 2, 2015.  In addition to civil penalties, the Alliance will seek injunctive relief preventing further violations of the CWA, 33 U.S.C. § 1365(a), (d), and RCRA, 42 U.S.C. § 6972.  Section 505(d) of the CWA, 33 U.S.C. § 1365(d), also permits prevailing parties to recover costs and fees.

The person providing this Notice is:

California Coastkeeper Alliance
c/o Erin Clancy, Staff Attorney
1100 11th Street, 3rd Floor
Sacramento, CA 95814
(619) 313-3037

The Alliance has retained legal counsel to represent them in this matter. All communications concerning this notice should be addressed to:

Jason R. Flanders
Erica A. Maharg
Aqua Terra Aeris Law Group
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Phone: (916) 202-3018
Email: jrf@atalawgroup.com
Email: eam@atalawgroup.com

During the 60- and 90-day notice periods for violations of the CWA and RCRA, respectively, the Alliance would like to discuss effective remedies with MEC to address the violations noted in this Notice Letter.  If MEC wishes to pursue such discussions, we suggest that you initiate those discussions as soon as possible.  At the close of the notice periods, if a complete and comprehensive solution is not finalized, the Alliance intends to move forward with litigation to prevent ongoing violations of the CWA and the RCRA.

Thank you for your attention to this matter.

/ / /

/ / /

Sincerely,

Jason R. Flanders
Aqua Terra Aeris Law Group
*On behalf of* California Coastkeeper Alliance



**SERVICE LIST (via U.S. Mail)**

Andrew R. Wheeler
Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

John W. Busterud
Regional Administrator
U.S. EPA, Region 9
75 Hawthorne Street
San Francisco, California 94105

William Barr
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-001

Patrick Pulupa
Executive Officer
Central Valley Regional Water Quality Control Board
11020 Sun Center Drive, #200
Rancho Cordova, CA 95670-6114

Eileen Sobeck
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Ken DaRosa
Acting Director
CalRecycle
P.O. Box 4025
Sacramento, CA 95812-4025

Cosumnes Corporation dba Murieta Equestrian Center
Attn: Maryann Subbotin, Registered Agent & CFO
7200 Lone Pine Dr., Suite 200
Rancho Murieta, CA 95683

Attachment A
Weather Station: USW00023271

SACRAMENTO RAIN DATA
6/18/2015 - 6/18/2020

Days with Precipitation
of at least 0.1 inch

| STATION | NAME | DATE | PRCP |
|---|---|---|---|
| USW00023271 | SACRAMENTO 5 ESE, CA US | 10/17/2015 | 0.38 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/1/2015 | 0.15 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/2/2015 | 0.26 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/8/2015 | 0.27 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/9/2015 | 0.27 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/15/2015 | 0.33 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/3/2015 | 0.35 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/13/2015 | 0.45 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/18/2015 | 0.39 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/19/2015 | 0.15 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/21/2015 | 0.22 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/4/2016 | 0.11 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/5/2016 | 1.19 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/6/2016 | 0.65 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/13/2016 | 0.23 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/15/2016 | 0.15 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/16/2016 | 0.15 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/17/2016 | 0.58 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/18/2016 | 0.69 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/19/2016 | 0.88 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/22/2016 | 0.37 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/23/2016 | 0.16 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/29/2016 | 0.32 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/17/2016 | 0.57 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/18/2016 | 0.25 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/4/2016 | 0.49 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/5/2016 | 1.14 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/6/2016 | 0.32 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/7/2016 | 0.39 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/10/2016 | 0.44 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/11/2016 | 0.47 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/12/2016 | 0.71 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/13/2016 | 0.44 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/14/2016 | 0.11 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/9/2016 | 0.21 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/10/2016 | 0.15 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/22/2016 | 0.4 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/27/2016 | 0.65 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 5/5/2016 | 0.36 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 5/20/2016 | 0.14 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 10/14/2016 | 0.59 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 10/15/2016 | 0.16 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 10/16/2016 | 1.43 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 10/25/2016 | 0.18 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 10/27/2016 | 0.68 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 10/28/2016 | 0.66 |

Attachment A Case 2:20-cv-01703-DB Document 1-1 Filed 08/25/20 Page 15 of 18
SACRAMENTO RAIN DATA
Days with Precipitation
Weather Station: USW00023271
6/18/2015 - 6/18/2020
of at least 0.1 inch

| | | | |
|---|---|---|---|
| USW00023271 | SACRAMENTO 5 ESE, CA US | 10/30/2016 | 0.62 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/19/2016 | 0.23 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/20/2016 | 0.28 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/23/2016 | 0.14 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/26/2016 | 0.38 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/27/2016 | 0.13 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/7/2016 | 0.11 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/8/2016 | 0.55 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/10/2016 | 0.52 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/15/2016 | 2.28 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/23/2016 | 0.24 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/2/2017 | 0.17 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/3/2017 | 0.5 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/4/2017 | 0.8 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/7/2017 | 1.1 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/8/2017 | 1.96 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/9/2017 | 0.18 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/10/2017 | 2.16 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/11/2017 | 0.19 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/12/2017 | 0.12 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/18/2017 | 0.93 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/19/2017 | 0.42 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/20/2017 | 0.68 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/21/2017 | 0.23 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/22/2017 | 0.37 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/2/2017 | 0.19 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/3/2017 | 1.04 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/5/2017 | 0.31 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/6/2017 | 1.15 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/7/2017 | 0.87 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/8/2017 | 0.39 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/9/2017 | 1.06 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/16/2017 | 0.27 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/17/2017 | 0.72 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/19/2017 | 0.19 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/20/2017 | 1.69 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/21/2017 | 0.14 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/4/2017 | 0.15 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/20/2017 | 0.38 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/21/2017 | 1.05 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/22/2017 | 0.77 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/24/2017 | 0.27 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/6/2017 | 1.04 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/7/2017 | 0.97 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/8/2017 | 0.28 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/12/2017 | 0.15 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/13/2017 | 0.24 |

Page 2 of 5

Attachment A Case 2:20-cv-01703-DB Document 1-1 Filed 08/25/20 Page 16 of 18
SACRAMENTO RAIN DATA
Days with Precipitation
Weather Station: USW00023271
6/18/2015 - 6/18/2020
of at least 0.1 inch

| | | | |
|---|---|---|---|
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/16/2017 | 0.39 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/17/2017 | 0.11 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/19/2017 | 0.11 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 6/8/2017 | 0.18 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/4/2017 | 0.14 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/8/2017 | 0.12 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/9/2017 | 0.17 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/15/2017 | 0.54 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/16/2017 | 0.97 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/17/2017 | 0.13 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/26/2017 | 0.22 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/27/2017 | 0.11 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/3/2018 | 0.17 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/4/2018 | 0.28 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/5/2018 | 0.36 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/8/2018 | 2.38 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/9/2018 | 1.18 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/18/2018 | 0.13 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/22/2018 | 0.23 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/24/2018 | 0.19 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/26/2018 | 0.61 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/1/2018 | 1.47 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/2/2018 | 0.34 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/8/2018 | 0.15 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/13/2018 | 0.84 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/14/2018 | 0.12 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/15/2018 | 0.43 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/16/2018 | 0.31 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/20/2018 | 0.5 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/21/2018 | 0.77 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/22/2018 | 0.36 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/6/2018 | 1.2 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/7/2018 | 0.45 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/16/2018 | 0.65 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 5/25/2018 | 0.32 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/21/2018 | 0.63 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/22/2018 | 0.27 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/23/2018 | |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/28/2018 | 0.22 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/29/2018 | 1.18 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/1/2018 | 0.32 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/5/2018 | 0.12 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/16/2018 | 1.17 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/17/2018 | 0.36 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/24/2018 | 0.47 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/25/2018 | 0.12 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/5/2019 | 0.24 |

Page 3 of 5

| | | | |
|---|---|---|---|
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/6/2019 | 1.26 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/9/2019 | 0.39 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/15/2019 | 0.82 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/16/2019 | 1.39 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/20/2019 | 0.3 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/1/2019 | 0.34 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/2/2019 | 0.58 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/4/2019 | 0.52 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/8/2019 | 0.16 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/9/2019 | 0.22 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/13/2019 | 1.93 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/14/2019 | 0.48 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/15/2019 | 0.3 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/25/2019 | 0.92 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/26/2019 | 2.52 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 2/27/2019 | 0.69 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/2/2019 | 0.73 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/5/2019 | 0.14 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/6/2019 | 0.44 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/19/2019 | 0.13 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/20/2019 | 0.14 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/22/2019 | 0.25 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/23/2019 | 0.87 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/25/2019 | 0.17 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/27/2019 | 0.24 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/2/2019 | 0.16 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/5/2019 | 0.14 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/15/2019 | 0.2 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 5/15/2019 | 1.14 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 5/16/2019 | 0.63 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 5/18/2019 | 0.65 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 5/19/2019 | 0.84 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/26/2019 | 0.39 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 11/30/2019 | 0.2 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/1/2019 | 1.04 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/2/2019 | 0.82 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/4/2019 | 0.39 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/7/2019 | 0.81 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/8/2019 | 0.2 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/18/2019 | 0.19 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/22/2019 | 0.69 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 12/29/2019 | 0.23 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/9/2020 | 0.4 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/16/2020 | 0.36 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 1/26/2020 | 0.24 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/7/2020 | 0.14 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/14/2020 | 0.28 |

Attachment A Case 2:20-cv-01703-DB Document 1-1 Filed 08/25/20 Page 18 of 18
SACRAMENTO RAIN DATA
Days with Precipitation
Weather Station: USW00023271
6/18/2015 - 6/18/2020
of at least 0.1 inch

| | | | |
|---|---|---|---|
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/15/2020 | 0.5 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 3/16/2020 | 0.6 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/4/2020 | 0.93 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 4/5/2020 | 1.17 |
| USW00023271 | SACRAMENTO 5 ESE, CA US | 5/17/2020 | 0.14 |

Page 5 of 5