1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CALIFORNIA COASTKEEPER                 No.  2:20-cv-1703 DB
     ALLIANCE,
12

13            Plaintiff,                    ORDER

14        v.

15   COSUMNES CORPORATION dba
     MURIETA EQUESTRIAN CENTER,
16

17            Defendant.

18

19        Each of the parties in the above-captioned case has consented to proceed before a United

20   States Magistrate Judge.  See U.S.C. § 636(c).  Accordingly, this matter has been reassigned to

21   the undersigned for all purposes.  (ECF No. 17.)  Pending before the court are the parties' *Phase I*

22   cross-motions for summary judgment and defendant's motion for oral argument.[1]  (ECF Nos. 80,

23   81, & 97.)  Defendant's motion argues that plaintiff cannot establish the elements necessary to

24   establish standing to proceed with this action.  Plaintiff's motion argues that plaintiff has standing

25   for this action and that the defendant discharges pollutants into a water of the United States.  For

26   the reasons explained below plaintiff's motion is granted and defendant's motions are denied.

27   _____

28   [1] The court finds this matter suitable for resolution without oral argument pursuant to Local Rule
     230(g).  Defendant's motion for oral argument will therefore be denied.

1
2
3
4
5
6
7
8
9
10

**BACKGROUND**

Plaintiff, proceeding through counsel, commenced this action on August 25, 2020, by filing a complaint and paying the required filing fee.  (ECF No. 1.)  Plaintiff is proceeding on a second amended complaint filed on March 10, 2022.  (ECF No. 49.)  The second amended complaint alleges generally that plaintiff California Coastkeeper Alliance ("Alliance") is an environmental group that "advances statewide policies and programs for healthy and clean water."  (Sec. Am. Compl. (ECF No. 49.) at 3.[2])  Defendant Cosumnes Corporation owns and operates that Murieta Equestrian Center ("MEC") located at 7200 Lone Pine Drive in Rancho Murieta, CA.  (Id.)  The MEC provides equine boarding for up to 379 horses year-round as well as hosting roughly 50 annual equestrian events.  (Id. at 6, 10.)

11
12
13
14
15
16

Plaintiff alleges that polluted stormwater and process wastewater discharges from defendant's operation into water that is protected by the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq*.  (Sec. Am. Compl. (ECF No. 49) at 9.)  Pursuant to these allegations, the second amended complaint asserts a cause of action for violation of the CWA and a cause of action for violation of the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972.  (Id. at 12-14.)

17
18
19
20
21
22
23

Defendant filed an answer on April 1, 2022.  (ECF No. 50.)  This action is proceeding pursuant to the parties' stipulated scheduling order.  (ECF No. 41.)  Pursuant to that order "*Phase I*" of the parties' discovery and summary judgment motions are limited to the issues of plaintiff's standing and whether defendant discharges pollutants into the Waters of the United States.  (Id. at 3.)  On December 16, 2022, each party filed their *Phase I* motion for summary judgment.  (ECF Nos. 80 & 81.)  The parties filed oppositions on January 18, 2023.  (ECF Nos. 86 & 87.)  And replies on February 17, 2023.  (ECF Nos. 88 & 89.)

24
////

25
////

26
////

27
28

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

2

On May 25, 2023, each party filed a notice of supplemental authority. (ECF Nos. 92 & 93.) On May 31, 2023, the parties were granted leave to file supplemental briefs addressing the supplemental authority. (ECF No. 94.) Each party filed a supplemental brief on June 23, 2023. (ECF Nos. 95 & 96.)

### LEGAL STANDARDS[3]

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support

////

---

[3] Typically, the court would provide a brief recounting of the relevant undisputed statements of fact. The parties, however, have rendered that impossible. In this regard, plaintiff has asserted 187 purported statements of undisputed facts to which defendant has disputed almost everyone. (ECF No. 81-1; ECF No. 87-4.) Conversely, defendant asserts a mere 33 undisputed facts, including facts of no use for summary judgment purposes such as the date plaintiff filed the second amended complaint and the date discovery closed. (ECF No. 80-3.) Defendant also repeatedly asserts evidentiary objections. When evaluating a motion for summary judgment, "[o]bjections to evidence on the ground that the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." Century 21 Real Estate LLC v. All Professional Realty, Inc., 889 F.Supp.2d 1198, 1215 (E.D. Cal. 2012) (citing Burch v. Regents of the Univ. of Cal., 433 F.Supp.2d 1110, 1119-20 (E.D. Cal. 2006)). "Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial." Id.

1    the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see
2    also Fed. R. Civ. P. 56(c)(1)(B).

3           Indeed, summary judgment should be entered, after adequate time for discovery and upon
4    motion, against a party who fails to make a showing sufficient to establish the existence of an
5    element essential to that party's case, and on which that party will bear the burden of proof at
6    trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential
7    element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In
8    such a circumstance, summary judgment should be granted, "so long as whatever is before the
9    district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id.
10   at 323.

11          If the moving party meets its initial responsibility, the burden then shifts to the opposing
12   party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
13   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
14   existence of this factual dispute, the opposing party may not rely upon the allegations or denials
15   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
16   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.
17   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the
18   fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
19   governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,
20   Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
21   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
22   party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

23          In the endeavor to establish the existence of a factual dispute, the opposing party need not
24   establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
25   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
26   trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
27   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
28   Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

"When, as here, the parties have filed cross-motions for summary judgment, the Court 'review[s] each motion for summary judgment separately, giving the nonmoving party for each motion the benefit of all reasonable inferences.'"  Campbell v. Feld Entertainment, Inc., 75 F.Supp.3d 1193, 1203 (N.D. Cal. 2014) (quoting Ctr. for Bio–Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't, 533 F.3d 780, 786 (9th Cir. 2008)).  In conducting this review the Court "must consider each party's evidence, regardless under which motion the evidence is offered."  Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532 (9th Cir. 2011).

## ANALYSIS

### I.    Standing

"Article III requires that the plaintiff have a concrete and particularized injury fairly traceable to the challenged conduct that likely can be redressed by a favorable judicial decision." Inland Empire Waterkeeper v. Corona Clay Co., 17 F.4th 825, 831 (9th Cir. 2021).  "'An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  Citizens for Better Forestry v. U.S. Dept. of Agriculture, 341 F.3d 961, 976 (9th Cir. 2003) (quoting Public Citizen v. Department of Transp., 316 F.3d 1002, 1019 (9th Cir. 2003)).

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  Plaintiff "bears the burden of showing that he has standing for each type of relief sought."  Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009).

### A.    Injury in Fact

> [A]n individual can establish 'injury in fact' by showing a connection to the area of concern sufficient to make credible the contention that the person's future life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction—if the area in question remains or becomes environmentally degraded.

Ecological Rights Foundation v. Pacific Lumber Co., 230 F.3d 1141, 1149 (9th Cir. 2000)

Here, plaintiff has offered the declaration of Sean Bothwell, plaintiff's Executive Director. (Bothwell Decl. (ECF No. 81-2) at 2.)  Therein, Bothwell declares to having "recreated several times on or near the Cosumnes River downstream of [defendant's] facility and plan on doing so in the future."  (Id.)  Specifically, Bothwell kayaked the river in October of 2018 "with the entire Alliance staff and a few Alliance members."  (Id.)  Bothwell had to "kayak through thick, disgusting algae," which Bothwell "attributed to runoff from animal operations, including but not limited to horse manure and urine."  (Id.)  This diminished Bothwell's enjoyment of the trip.  (Id.)  Bothwell also "avoided touching the water as much as possible" due to "concerns about bacteria pollution."  (Id.)

Bothwell again visited on December 17, 2019, to observe Sandhill Cranes and walk through oak tress and riparian fauna.  (Id. at 4.)  Bothwell intended to return in 2020, but was unable as a result of the COVID-19 pandemic.  (Id.)  Bothwell intends to return "in future years to observe the Sandhill Cranes and generally enjoy the Preserve[.]"  (Id.)

////

"It is well established 'that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity.'" Association of Irritated Residents v. U.S. Environmental Protection Agency, 10 F.4th 937, 943 (9th Cir. 2021) (quoting Friends of the Earth, 528 U.S. at 183)).

Defendant argues that "[t]he limited nature of Mr. Bothwell's three visits . . . is unavailing to establish immediate harm." (Def.'s MSJ (ECF No. 80-1) at 16.)  The court disagrees.  See Ecological Rights Foundation, 230 F.3d at 1150 ("An individual who visits Yosemite National Park once a year to hike or rock climb and regards that visit as the highlight of his year is not precluded from litigating to protect the environmental quality of Yosemite Valley simply because he cannot visit more often.").

In this regard, plaintiff has established an injury in fact.  See Californians for Alternatives to Toxics v. Schneider Dock & Intermodal Facility, Inc., 374 F.Supp.3d 897, 909 (N.D. Cal. 2019) ("it is sufficient that CAT's members have derived recreational and aesthetic benefit from their use of the Bay (including areas of the Bay next to [the SDIF Facility]), but that their use has been curtailed because of their concerns about pollution, contaminated fish, and the like").

## B.      Traceability

For an injury to be fairly traceable "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Lujan, 504 U.S. 555 at 560-61 (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976).  "An injury is fairly traceable to a challenged action as long as the links in the proffered chain of causation "are 'not hypothetical or tenuous' and remain 'plausib[le].'" AIR v. EPA, 10 F.4th at 943.

A plaintiff is not required to "show to a scientific certainty that defendant's [actions] caused the precise harm suffered by the plaintiffs[.]" Natural Resources Defense Council v. Southwest Marine, Inc., 236 F.3d 985, 995 (9th Cir. 2000) (quotation omitted).  Rather, "a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the

1   kinds of injuries alleged in the specific geographic area of concern."  Id.  "Where more than one

2   potential discharger is part of the same system, a plaintiff need not show that the discharge came

3   from a specific user.  San Francisco Baykeeper v. West Bay Sanitary Dist., 791 F.Supp.2d 719,

4   749 (N.D. Cal. 2011).

5        Here, plaintiff has offered evidence to support traceability.  For example, plaintiff offered

6   the expert opinion of Ian Wren.  (Wren Decl. (ECF No. 81-4) at 1.)  Wren holds "an MSc in

7   Hydrology from Imperial College London and a BA in Integrative Biology from UC Berkely."

8   (Id. at 75.)  Wren is also "a Certified Professional in Stormwater Quality . . . a California

9   Construction General Permit Qualified Stormwater Pollution Prevention Place Developer . . . and

10  a California Industrial General Permit Qualified Industrial Storm Water Practitioner.  (Id.)

11       Wren collected stormwater samples in and discharging from defendant's facility on March

12  18, 2021, and April 21, 2022.  (Id. at 2.)  Wren also collected a sample of stormwater "runoff as it

13  flowed out of the eastern entrance" of defendant's facility to a "roadside swale that discharges to

14  the Unnamed Stream."  (Id. at 31.)  These samples were "elevated in fecal coliform, total

15  suspended solids, and ammonia."  (Id.)  "Results from March 18, 2023, revealed elevated levels

16  of fecal coliform in stormwater runoff from the MEC Facility."  (Id. at 34.)  Sampling of "a

17  discharge point from the MEC Facility directly to the Unnamed Stream . . . . exceeded the

18  analytical detection limit" for fecal coliform concentrations.  (Id.)  "E.coli is a significant member

19  of the fecal coliform group[.]"  (Id.)  Wren's other samples exhibited similar results.[4]  (Id. at 34-

20  45.)

21       Based on Wren's testing and observations, Wren opined that defendant's facility

22  "discharges pollutants to the Unnamed Stream and the Cosumnes River."  (Id. at 4.)  And that

23

24  [4] In opposing plaintiff's motion for summary judgment defendant argues that Wren "used
    improper sampling techniques and failed to account for dilution."  (Def.'s Opp.'n (ECF No. 87) at

25  22.)  "Expert opinion is admissible and may defeat summary judgment if it appears the affiant is
    competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit,

26  even though the underlying factual details and reasoning upon which the opinion is based are
    not."  Bulthuis v. Rexall Corp., 789 F.2d 1315, 1318 (9th Cir. 1985).  Examination of an expert's

27  facts and data underlying their opinion is accomplished via cross-examination not a motion for
    summary judgment.  Bieghler v. Kleppe, 633 F.2d 531, 534 (9th Cir. 1980).

28

1   these pollutants "are known to cause adverse effects to human health and the environment."  (Id.)

2   As noted above, plaintiff's standing witness Sean Bothwell has claimed that defendant's conduct

3   has diminished Bothwell's use and enjoyment of the Consumes River.  In this regard, the court

4   finds that plaintiff has satisfied the traceability requirement.  See Idaho Conservation League v.

5   Atlanta Gold Corp., 844 F.Supp.2d 1116, 1130 (D. Idaho 2012) ("plaintiffs need not prove their

6   entire case in order to establish the traceability element of standing; instead, they need only show

7   that there is a substantial likelihood that AGC's conduct caused their harm"); S.F. Baykeeper, 791

8   F.Supp.2d at 749 (allegation of lessened use and enjoyment due to defendant's conduct sufficient

9   to establish traceability).

10          **C.      Redressability**

11          "To establish Article III redressability, a plaintiff must show that the relief sought is both

12   (1) substantially likely to redress the claimed injuries; and (2) within the district court's power to

13   award." San Francisco Baykeeper v. City of Sunnyvale, 627 F.Supp.3d 1102, 1116 (N.D. Cal.

14   2022).  "A plaintiff's burden to demonstrate redressability is 'relatively modest.'" M.S. v.

15   Brown, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting Renee v. Duncan, 686 F.3d 1002, 1013 (9th

16   Cir. 2012)).  In this regard, a plaintiff need only "show that a favorable decision will likely

17   redress his injury." Mayfield v. U.S., 599 F.3d 964, 971 (9th Cir. 2010).

18          Here, the second amended complaint is seeking injunctive relief as well as civil penalties

19   for violation of the CWA.  (Sec. Am. Compl. (ECF No. 49) at 15.)  "Should the court find that

20   defendant failed to comply with the CWA, and impose civil penalties, it is well established that

21   would sufficiently redress the injuries of which plaintiff complains." California Sportfishing

22   Protection Alliance v. California Ammonia Co., No. Civ. S-05-0952 WBS JFM, 2007 WL

23   273847, at *4 (E.D. Cal. Jan. 29, 2007).  Plaintiff, therefore, has satisfied the redressability

24   requirement.

25          Accordingly, for the reasons stated above, the court finds that plaintiff has established that

26   at least one of plaintiff's members has standing to bring this action.  Defendant's motion for

27   summary judgement based on an alleged lack of standing is therefore denied.

28   ////

1    **II.      Waters of the United States**

2          "The Clean Water Act forbids the 'addition' of any pollutant from a 'point source' to

3    'navigable waters' without the appropriate permit from the Environmental Protection Agency

4    (EPA)."  Cnty. of Maui, Hawaii v. Hawaii Wildlife Fund, 140 S. Ct. 1462, 1468 (2020) (citing 33

5    U.S.C. §§ 1311(a), 1362(12)(A)).  "[T]he statute requires a permit when there is a direct

6    discharge from a point source into navigable waters or when there is the functional equivalent of

7    a direct discharge."  Id. at 1476.  "The term 'point source' means any discernible, confined and

8    discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well,

9    discrete fissure, . . . [or] concentrated animal feeding operation . . . from which pollutants are or

10   may be discharged.  This term does not include agricultural stormwater discharges and return

11   flows from irrigated agriculture.  33 U.S.C. § 1362(14).  "The term 'pollutant' means dredged

12   spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical

13   wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock,

14   sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."  33

15   U.S.C. § 1362(6).

16         "The term 'navigable waters' means the waters of the United States, including the

17   territorial seas."  33 U.S.C. § 1362(7).  Such waters "includes only those relatively permanent,

18   standing or continuously flowing bodies of water 'forming geographic features' that are described

19   in ordinary parlance as 'streams, oceans, rivers, and lakes.'"  Rapanos v. U.S., 547 U.S. 715, 739

20   (2006) (original alterations omitted).  The CWA also extends to "those wetlands that are 'as a

21   practical matter indistinguishable from waters of the United States.'"  Sackett v. Environmental

22   Protection Agency, 143 S. Ct. 1322, 1341 (2023) (quoting Rapanos, 547 U.S. at 755).

23         Here, it is undisputed that the Cosumnes River is a water of the United States.  (Def.'s

24   Resp. (ECF No. 87-4) at 29.)  Plaintiff has presented evidence that defendant's facility is

25   bordered by an Unnamed Stream that flows for roughly 1.6 miles before draining into the

26   Cosumnes River.  (Pl.'s SUDF (ECF No. 81-1) at 27.)  Plaintiff has also presented evidence that

27   defendant discharges stormwater into the Unnamed Stream through "storm drain inlets" and

28   "outfall pipes."  (Id. at 15, 17-20, 59.)  That such stormwater contains pollutants.  (Id. at 23-24;

1  ECF No. 89 at 8.)  And that water is present in the Unnamed Stream year-round.  (Pl.'s SUDF

2  (ECF No. 81-1) at 56.)

3        Given the evidence presented, the court will grant plaintiff's motion for summary

4  judgment with respect to this issue.[5]  See generally California Sportfishing Protection Alliance v.

5  Chico Scrap Metal, Inc., 124 F.Supp.3d 1007, 1018 (E.D. Cal. 2015) ("Since Plaintiff has shown

6  discharges from the Facility reach the Wyman Ravine and the Wyman Ravine seeps into the

7  Feather River, Plaintiff's motion on this issue is granted and Defendants' motion is denied.").

8  **CONCLUSION**

9        For the reasons stated above, IT IS HEREBY ORDERED that:

10        1.  Plaintiff's December 16, 2022 *Phase I* motion for summary judgment (ECF No. 81) is

11  granted with respect to the issues of standing and Waters of the United States as addressed above;

12        2.  Defendant's December 16, 2022 *Phase I* motion for summary judgment (ECF No. 80)

13  is denied;

14        3.  Defendant's July 6, 2023 request for oral argument (ECF No. 97) is denied; and

15        4.  Within 14 days the parties shall submit a proposed stipulated further schedule.

16  Dated:  August 16, 2023

17

18

19  DEBORAH BARNES
   UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24  DLB:6
   DB/orders/orders.consent/coastkeeper1703.msj.ord

25  _____

26  [5] Plaintiff's motion asks that the court "enter a summary judgment against MEC" and "a finding of liability for each such day of discharge without a CWA permit."  (Pl.'s MSJ (ECF No. 81) at

27  31.)  The parties' stipulated schedule, however, limited *Phase I* to only the issues of plaintiff's standing and whether a water of the United States is at issue in this action.  This order only

28  concerns those 2 issues.