1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CALIFORNIA COASTKEEPER                    No.  2:20-cv-1703 SCR
     ALLIANCE,
12

13                  Plaintiff,                 ORDER

14         v.

15   COSUMNES CORPORATION dba
     MURIETA EQUESTRIAN CENTER,
16

17                  Defendant.

18

19         Each of the parties in this case has consented to proceed before a United States Magistrate

20   Judge.  *See* 28 U.S.C. § 636(c).  Accordingly, this matter was reassigned to the undersigned for

21   all purposes.  ECF No. 17.  Now before the Court are three motions:  1) Plaintiff's Motion for

22   leave to file a Third Amended Complaint (ECF No. 113); 2) Plaintiff's Motion for Summary

23   Judgment (ECF No. 115); and 3) Plaintiff's Motion to exclude expert testimony (ECF No. 118).

24   The Court grants the motion for leave to amend, grants the motion for summary judgment, and

25   denies without prejudice the motion to exclude expert testimony.

26         I.      **Background and Procedural History**

27         Plaintiff California Coastkeeper Alliance filed this action on August 25, 2020.  Plaintiff

28

                                                1

sought civil penalties and injunctive relief for violation of the Water Pollution Control Act,[1] 33 U.S.C. § 1311.  ECF No. 1.  Plaintiff alleged that Defendant Consumnes Corporation owned and operated the Murieta Equestrian Center ("MEC") and that MEC discharged polluted wastewater and industrial wastewater into adjacent waters without a permit.  ECF No. 1 at ¶ 8.  MEC is a facility that provides equine boarding accommodations and has "several outdoor arenas and indoor arenas; spectator seating; dry camping and RV accommodations with a sewer site, dumping station dumpsters, restrooms and showers; a café; and cattle facilities."  ECF No. 1 at ¶ 15.  Plaintiff alleged the facility could accommodate up to 1,000 horses and was one of the largest boarding facilities in California.  *Id*. at ¶ 16.

Plaintiff filed a First Amended Complaint ("FAC") on October 1, 2020.  ECF No. 4.  Defendant filed an Answer on November 20, 2020, and generally denied the allegations and asserted several affirmative defenses.  ECF No. 9.  Defendant thereafter filed an Amended Answer.  ECF No. 13.  With the consent of the parties, this matter was assigned to Magistrate Judge Barnes on February 16, 2021.  ECF No. 17.  A Scheduling Order was entered on April 5, 2021, which provided in relevant part that no further joinder of parties or amendment of pleadings is permitted absent leave of court for good cause shown.  ECF No. 22 at 2.

In a stipulated scheduling order filed on February 9, 2022, the parties agreed to divide the litigation into three phases:

1) "Phase I discovery shall be limited to issues related to standing and whether Defendant's facility discharges pollutants to Waters of the United States."

2) "Phase II discovery shall be limited to issues related to all remaining Clean Water Act issues, including remedies."

3) "Phase III discovery shall be limited to issues related to the Plaintiff's claims for violation of RCRA [the Resources Conservation and Recovery Act]."[2]

---

[1]  The Federal Water Pollution Control Act of 1948 was the basis for the Clean Water Act ("CWA").  After amendments in 1972, the Clean Water Act because the Act's common name.  Summary of the Clean Water Act | US EPA.
[2] Plaintiff had added a RCRA claim to the case in the FAC.

ECF No. 41 at 3.  Plaintiff was granted leave to file a Second Amended Complaint ("SAC"), and filed the SAC on March 10, 2022.  ECF No. 49.

The parties filed cross-motions for partial summary judgment as to the Phase I issues on December 16, 2022.  ECF Nos. 80 & 81.  After allowing supplemental briefing, on August 16, 2023, Magistrate Judge Barnes granted Plaintiff's motion, and denied Defendant's motion.  ECF No. 99.  Judge Barnes concluded that Plaintiff had shown injury in fact, traceability, and redressability, and had therefore established standing.  ECF No. 99 at 5-9.  Judge Barnes also found that this action involved Waters of the United States ("WOTUS").  ECF No. 99 at 10-11.  She stated "it is undisputed that the Consumnes River is a water of the United States."  *Id.* at 10.  Further, Plaintiff offered evidence that MEC is bordered by an "Unnamed Stream" that flows for roughly 1.6 miles before draining into the Consumnes River, that MEC discharges stormwater into the Unnamed Stream through storm drain inlets and outfall pipes, and that "such stormwater contains pollutants."  *Id.*

After the ruling by Judge Barnes, the parties entered into a stipulated scheduling order for Phase II.  ECF No. 101.  The Order provided that Phase II discovery would be limited to: 1) whether MEC is a concentrated animal feeding operation ("CAFO"); 2) whether MEC possesses a Clean Water Act ("CWA") permit; and 3) remedies.  ECF No. 101 at 6.  The court set deadlines for the filing of Phase II motions for summary judgment.  ECF Nos. 101 & 112 (clarifying).

On April 5, 2024, Plaintiff filed a Motion for Leave to File a Third Amended Complaint ("Motion to Amend").  ECF No. 113.  Plaintiff argues that amendment is necessary to add Carol Anderson Ward ("Ms. Ward") in her individual capacity as well as in her capacity as the Trustee of the Carol Anderson Ward Trust (the "Trust").[3]  Defendant opposes the motion, arguing that the proposed amendment is untimely and would prejudice Defendant.  ECF No. 119.  Defendant further argues that the proposed Third Amended Complaint ("TAC") does not adequately plead

---

[3]  Plaintiff sought leave to file its memorandum in support of the Motion to Amend and supporting documents under seal, ECF No. 114, which the Court granted, ECF No. 126. Supporting documents and the proposed Third Amended Complaint were filed under seal at ECF No. 146, however, it appears that the memorandum itself was never filed as a sealed event. Plaintiff is instructed to file that memorandum under seal forthwith.

alter ego liability or liability under the responsible corporate officer doctrine ("RCOD") and thus amendment would be futile.  ECF No. 119.

Plaintiff also filed a Motion for Summary Judgment ("MSJ") (ECF No. 115) on the Phase II issues.  Plaintiff's MSJ seeks a finding that MEC is a CAFO and does not possess a National Pollutant Discharge Elimination System ("NPDES") permit and is therefore liable for violating the CWA by discharging pollutants without a permit.  Defendant filed an opposition to the MSJ and supporting documents (ECF Nos. 133 & 134) and Plaintiff filed a reply (ECF No. 140).  The parties also submitted supplemental briefs on the impact of *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (2024) on the MSJ.  ECF Nos. 147, 151, 152.

In a separately-filed motion, Plaintiff also seeks to exclude some of the opinions of Defendant's expert, Timothy Swickard.  ECF No. 118.

On October 8, 2024, at a specially-set hearing, the Court heard nearly two hours of argument on the pending motions.

**II.     Plaintiff's Motion for Leave to File a Third Amended Complaint**

Plaintiff seeks to add Ms. Ward as a defendant in this action, which has been pending for four years and Plaintiff has already twice amended its complaint.  A scheduling order provided that further amendment would not be allowed except upon leave of court and for good cause. ECF No. 22 at 2.  "Once the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards control[]."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  *Id.* at 609.  In this regard, under Rule 16(b), plaintiffs "must show good cause for not having amended their complaints before the time specified in the scheduling order expired."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).  In addition to diligence, the court may also take into account any prejudice to the party opposing modification. *In re Western States Wholesale*, 715 F.3d 716, 737 (9th Cir. 2013).  Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," however, the Ninth Circuit has stated "it is not to be granted automatically."  *Zivkovic v. Southern California Edison Co.*, 302

F.3d 1080, 1087 (9th Cir. 2002).  The court "may deny a motion for leave to amend if permitting an amendment would, among other things, cause an undue delay in the litigation or prejudice the opposing party."  *Id.* at 1087.

Under Federal Rule of Civil Procedure 20, which concerns permissive joinder of parties, a party may be joined as a defendant if: 1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and 2) any question of law or fact common to all defendants will arise in the action.  Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits."  *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d, 914, 917 (9th Cir. 1977).  A determination on the question of joinder of parties lies within the discretion of the district court.  *Corley v. Google, Inc.*, 316 F.R.D. 277, 282 (N.D. Cal. 2016) (quotation and citation omitted).

Plaintiff argues it has been diligent in pursuing the case and that the phasing of discovery prevented it from learning more about Ms. Ward's involvement with MEC in Phase I.  Plaintiff's Memorandum in support of Motion for Leave to Amend at 1 ("Discovery into MEC's finances and management was unavailable in Phase I.").[4]  Plaintiff contends that it did not learn until April 2024, through MEC's expert disclosure "that MEC is effectively insolvent but for Carol Anderson Ward's continuous financial support, and but for the Trust permitting MEC to operate on its land rent free."  *Id.* at 12.

Plaintiff argues that the proper framework for this Court's analysis is the five-factor test from *Forman v. Davis*, 371 U.S. 178 (1962).  Under the *Forman* test, the court considers: 1) bad faith, 2) undue delay, 3) prejudice to the opposing party, 4) futility of amendment, and 5) whether the party has previously amended the pleadings.  *Id.* at 182.  Plaintiff argues there was no bad faith, or undue delay, and that MEC will not be prejudiced because adding Ms. Ward does not affect MEC's liability.  *Id.* at 13-14.  Plaintiff contends that the additional issues that Ms. Ward's

---

[4] As noted above in footnote 3, this memorandum has not yet been filed as a sealed event.  It will be cited hereafter as Memo.

1  inclusion in the case will involve are ownership and corporate responsibility, which it argues are

2  more relevant to remedies.  *Id.* at 14.

3        Defendant argues that Plaintiff has not been diligent in seeking amendment and that

4  amendment would be futile.  ECF No. 119.  Defendant contends that Ms. Ward is now being

5  added because the Trust owns the land on which the MEC operates, and her ownership could

6  have been discerned by "simply consulting the public land records of Sacramento County."  *Id.* at

7  6.  Similarly, Defendant argues that Plaintiff could have discovered that Ms. Ward was the

8  president and CEO of the MEC through public records available through the California Secretary

9  of State's office.  *Id.*

10        Defendant argues that Ms. Ward will be prejudiced because the case is so far along and

11  additional discovery will be needed.  Defendant also argues that the proposed amendment is futile

12  because the allegations do not make a sufficient showing of Ms. Ward's knowledge and

13  involvement to establish liability under the RCOD or on an alter ego theory.  ECF No. 119 at 10.

14  In Reply, Plaintiff argues that it was diligent and that Defendant objected to written discovery

15  regarding MEC's financial management as premature during Phase I, and was not cooperative in

16  attempts to depose Ms. Ward.  Plaintiff further contends that MEC never disputes that Ms. Ward

17  is in privity with MEC and thus there would be no need to relitigate issues decided in Phase I, or

18  to reopen Phase II discovery.  ECF No. 121 at 1.  Plaintiff argues that it has sufficiently pled Ms.

19  Ward's liability in the proposed TAC and that there is not a knowing intent requirement for civil

20  liability under the CWA.  *Id*. at 2.

21      **A.  Rule 16(b)'s Good Cause Requirement and Diligence**

22        The court finds that Plaintiff has been diligent.  As set forth in its motion and argued at

23  oral argument, Plaintiff did not learn the full extent of Ms. Ward's involvement with MEC until

24  during Phase II discovery.  Plaintiff states it began to learn of the full extent of Ms. Ward's

25  involvement with MEC at depositions conducted in December 2023 and January 2024, and that it

26  then served follow-up written discovery and attempted to take Ms. Ward's deposition.  Memo at

27  11.  Plaintiff states it attempted to serve her with a subpoena for deposition on twelve different

28  occasions.  ECF No. 146 at 5.  In March of 2024, Plaintiff sought unsuccessfully to obtain a

stipulation from defense counsel to file the TAC.  *Id.* at 6.  At oral argument, Plaintiff focused on April 1, 2024, as the key date when it received MEC's expert report and learned that MEC "is effectively insolvent but for Carol Anderson Ward's continuous financial support, and but for the Trust permitting MEC to operate on its land rent free."  Memo at 12.  Plaintiff then filed this motion on April 5, 2024.

"Good cause" is not the most exacting standard.  It has various applications in the law, and has been construed differently in different contexts.  However, the Ninth Circuit has stated: "Good cause is a non-rigorous standard that has been construed broadly across procedural and statutory contexts."  *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) (citing various cases).[5]  A court must exercise its discretion in determining whether the standard is met.

In *Pizana v. SanMedica International LLC*, 345 F.R.D. 469 (E.D. Cal. 2022), this Court addressed circumstances similar to those here.  Plaintiff Pizana sought to file a third amended complaint after the time set in the scheduling order had passed.  Pizana filed the motion more than two and a half years after the action was filed, and six months after the deadline set in the scheduling order.  *Id.* at 474-75.  Pizana argued he had learned new facts at a deposition taken after the deadline to amend which warranted amendment.  *Id.* at 475.  In examining diligence, the court considered that Pizana filed the motion approximately three and a half months after the first deposition at which it learned some of the new information, and about one month after the last deposition.  The court found Pizana was diligent and cited cases observing that it was reasonable for a plaintiff to delay seeking amendment to place newly discovered information into context, or to conduct the investigation required by Rule 11.  *Id.* at 480-81.  The court further stated that "courts routinely find good cause when a movant shows that facts supporting new amendments were revealed for the first time in discovery."  *Id.* at 481 (citing cases).

The *Pizana* court, having found diligence and good cause then moved on to Rule 15 standard which requires liberality in granting leave to amend.  The court stated leave to amend

---

[5]  Although *Ahancian* involved Fed. R. Civ. P. 6, it cited to cases involving a range of contexts, including setting aside default judgments and application of federal sentencing guidelines.

1     should be granted unless "there is strong evidence of undue delay, bad faith or dilatory motive on

2     the part of the movant … undue prejudice to the opposing party by virtue of allowance of the

3     amendment, or futility of amendment." *Id.* at 482 (internal quotation and citation omitted).  The

4     consideration of prejudice "carries the greatest weight" and the party opposing leave to amend

5     bears the burden of showing prejudice.  *Id.*

6        This Court finds the Rule 16 good cause requirement was met and that Plaintiff was

7     diligent.  Discovery of the necessary facts was delayed by the parties' agreement to conduct

8     discovery in phases.  Defendant does not dispute that Plaintiff learned new information that

9     underlies Plaintiff's proposed amendment in December 2023 and January 2024.  *See* ECF No.

10    119 at 4 ("Through these document requests and depositions, Plaintiff learned much of the

11    information it now asserts as a basis for its motion, filed three months later, with no explanation

12    for the delay.").  After beginning to learn of the full extent of Ms. Ward's and the Trust's

13    involvement in MEC through depositions in December 2023 and January 2024, Plaintiff

14    attempted to conduct additional investigation by making several attempts to take Ms. Ward's

15    deposition.  Plaintiff then attempted to obtain a stipulation to the amendment in March 2024, and

16    then filed the motion.  Plaintiff also learned more about MEC's financial condition and Ms.

17    Ward's role in financing MEC's ongoing operations in an expert disclosure made on April 1,

18    2024.  The three-to-four-month time frame at issue during which additional information was

19    learned in discovery and investigated is very similar to that at issue in *Pizana*.

20        **B.  Rule 15 Leave to Amend**

21        Moving to the Rule 15 analysis, the Court considers whether there has been undue delay,

22    bad faith or dilatory motive, and considers whether the amendment would be unduly prejudicial

23    or futile.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The

24    policy underlying Rule 15 is that leave to amend should be freely given when justice so requires,

25    and that policy is "applied with extreme liberality." *Id.* at 1051.  As explained above, there was

26    no undue delay and Plaintiff has been diligent.  Although the motion to amend was not filed until

27    approximately three and a half years after the action was filed, much of this delay was due to the

28    parties' agreed structuring of the case into three phases.  Additionally, delay alone is generally

insufficient to deny leave to amend under Rule 15.  The Ninth Circuit has stated, in a case where the proposed amendment came five years after the filing of the pleading, "we know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).  In any event, there is no evidence of bad faith or dilatory motive.

Defendant argues that the amendment would be prejudicial and futile.  "Undue prejudice means substantial prejudice or substantial negative effect."  *Pizana*, 345 F.R.D. at 483. Substantial prejudice may be found where the addition of new claims "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new defense."  *Id.* (internal quotation and citation omitted).  Defendant's prejudice argument does not focus on prejudice to *itself as the opposing party*, but rather argues that "Ms. Ward would sustain extreme prejudice."  ECF No. 119 at 2.  Defendant contends that additional discovery and motion practice would be required concerning the RCOD and alter ego liability. ECF No. 119 at 10.  As to prejudice to itself, Defendant only vaguely argues it will "suffer prejudice in the form of unreasonable delay."  *Id.*  Defendant's general assertion of prejudice from the delay to conduct some additional limited discovery does not demonstrate Defendant will suffer undue prejudice.

As to futility, Defendant argues that the TAC does not sufficiently plead liability under RCOD or alter ego theories.  However, "a proposed amendment is futile only if no set of facts can be proved under the amendment that would constitute a valid claim."  *Pizana*, 345 F.R.D. at 484. In *Pizana*, the court stated: "Even though the alter ego allegations may not survive a Rule 12(b)(6) challenge, the granting of leave to amend is still warranted because in this case the court can conceive of additional facts, if formally alleged, that would support a claim for alter ego liability."  *Id.* at 488.

The proposed TAC alleges that Ms. Ward is Defendant's "chief executive officer, president of the board, and sole shareholder."  TAC at ¶ 21.  It further alleges Ms. Ward had "ultimate control" over MEC's financial decisions and operations, including control over management practices addressing pollutant discharge.  TAC at ¶ 22.  It is further alleged Ms.

Ward had personally loaned MEC "millions of dollars with no written terms regarding loan satisfaction." TAC at ¶ 23. It alleges she had knowledge of CWA violations and was the person responsible for ensuring CWA compliance. TAC at ¶¶ 25-26. It is alleged that the Trust owns real property where MEC "dumps manure and used bedding" and also owns the real property underlying MEC, and where MEC is the tenant. TAC at ¶¶ 29-30. Plaintiff alleges the Trust has the "legal authority to access and/or approve the actions resulting in CWA violations" and was a person responsible for ensuring CWA compliance. TAC at ¶¶ 32-33.

"Under the CWA, a person is a 'responsible corporate officer' if the person has authority to exercise control over the corporation's activity that is causing the discharges." *United States v. Iverson*, 162 F.3d 1015, 1025 (9th Cir. 1998). The responsible corporate officer doctrine has been applied in both criminal and civil cases. *Waterkeepers Northern Cal. v. Ag Indus. Mfg.*, Inc., 2005 WL 2001037 (E.D. Cal. 2005). In the criminal context, the Supreme Court has stated that "the Government establishes a prima facie case when it introduces evidence sufficient to warrant a finding by the trier of the facts that the defendant had, by reasons of his position in the corporation, responsibility and authority either to prevent in the first instance or to promptly correct, the violation complained of, and that he failed to do so." *United States v. Park*, 421 U.S. 658, 668 (1975). The TAC alleges that Ms. Ward is the CEO and sole shareholder and that she had ultimate control over operations and management decisions. It further alleges that she had knowledge of the CWA violations and was the person responsible for compliance. The Court finds amendment is not futile as to the RCOD.

As to the alter ego theory, California state law applies. "To recover on an alter ego theory, a plaintiff need not use the words 'alter ego,' but must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor." *Leek v. Cooper*, 194 Cal.App.4th 399, 415 (Cal. Ct. App. 2011). An allegation that one person "owns all the corporate stock and makes all the management decisions is insufficient to cause the court to disregard the corporate entity." *Id.* There are numerous factors to be considered in determining whether the doctrine applies, including: commingling of funds; failure to maintain minutes or adequate corporate records; sole ownership of all the stock by one person or family;

failure to adequately capitalize; absence of corporate assets; and undercapitalization. *Id.* at 417-18. "Whether a party is liable under an alter ego theory is a question of fact." *Id.* at 418. Alter ego theory "is not itself a claim for substantive relief," but rather is a "procedural device" used to hold the alter ego individual liable on the obligations of the corporation. *Id.* at 419. This device may even be employed post-judgment. *Id.* ("Under some circumstances a judgment against a corporation may be amended to add a nonparty alter ego as a judgment debtor."). The amendment is considered an equitable procedure based on the theory "that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." *Id.* at 419 (internal quotation and citation omitted).

To succeed on an alter ego claim, two conditions must be met: 1) unity of interest and ownership between the corporation and its equitable owner such that the separate personalities do not in reality exist; and 2) an inequitable result if the acts in question are treated as those of the corporation alone. *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538 (Cal. Ct. App. 2000). The inequitable result component "does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Id.* at 539. Mere difficulty in enforcing a judgment or collecting a debt does not satisfy the standard. *Id.* However, in certain circumstances undercapitalization can satisfy this element. *See Nordell Intern. Resources, Ltd. v. Triton Oil*, 97 F.3d 1460, *3 (9th Cir. 1996) ("the Ninth Circuit has recognized that severe undercapitalization can satisfy the element of injustice to litigants if the capital input is insufficient to meet obligations that could reasonably be expected to arise in the normal course of the corporation's business."). The Court does not find that amendment would be futile as to alter ego. Accordingly, the court will GRANT the motion for leave to file a Third Amended Complaint.

This amendment does not affect the concurrently-decided MSJ. As Defendant argues: "The issues concerning Ms. Ward's potential liability are entirely distinct from all other issues in the case. Ms. Ward's potential liability has little or nothing to do with whether MEC is liable." ECF No. 119 at 13. Plaintiff agrees with this assertion that adding Ms. Ward does not affect

1    MEC's liability, and thus it is appropriate to proceed with the pending summary judgment

2    motion.  ECF No. 121 at 2.  Plaintiff contends the only additional discovery needed pertains to

3    Ms. Ward's operational and financial control of MEC.  ECF No. 121 at 8.  The Court finds it is

4    appropriate to decide the motion for summary judgment at this time, which is fully briefed, and to

5    make a determination as to whether Defendant Consumnes Corporation is liable for violation of

6    the CWA.  Before turning to the motion for summary judgment, the Court will briefly address

7    Plaintiff's motion in limine (ECF No. 118), which does not impact the summary judgment record.

8         **III.    Plaintiff's Motion in Limine**

9         Plaintiff's motion argues that the testimony of defense expert Timothy Swickard should

10   be excluded in its entirety or limited in scope.  ECF No. 118 at 1.  Opposition and reply briefs

11   have been filed.  ECF No. 139 & 142.  Plaintiff contends that Mr. Swickard is a lawyer in the

12   firm representing Defendant in this matter and that his testimony does not meet the reliability

13   standard articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

14   Further, Plaintiff contends Mr. Swickard's opinions are beyond the scope of Phase II of this

15   litigation, and that he offers impermissible legal conclusions.  ECF No. 118 at 7-9.

16        In response, Defendant argues this motion in limine is premature in that Defendant has not

17   cited or relied upon Mr. Swickard's testimony in the summary judgment briefing.  ECF No. 139.

18   On the merits, Defendant contends that Mr. Swickard is qualified and refers to his Statement of

19   Qualifications.  ECF No. 118-1 at 8.  It states he was CEO and General Manager of a confined

20   animal feeding company from 1981 to 1997, and served as a federal and state CAFO consultant

21   from 1997 to 2004. *Id.*

22        The Court agrees that the motion is premature.  Defendant is not seeking to rely on the

23   opinions of Mr. Swickard to dispute the issues set forth in the summary judgment briefing.  The

24   Motion (ECF No. 118) is DENIED without prejudice.

25        **IV.    Plaintiff's Motion for Summary Judgment**

26        Plaintiff argues that because the Court has already rejected Defendant's principal

27   defenses–lack of standing and the waters of the United States ("WOTUS") issue–in the Phase I

28   summary judgement order, this case is now "relatively simple."  ECF No. 115 at 1.  In the instant

MSJ, Plaintiff asserts that there are no issues of material fact as to whether MEC is a CAFO and whether it possess a National Pollutant Discharge Elimination System ("NPDES") permit. Plaintiff asserts MEC is therefore liable for violating the CWA by discharging pollutants without a permit and that the Court should immediately enjoin further discharge.  MEC argues that it is not a CAFO.  ECF No. 133 at 4.  MEC concedes that it satisfies the numerosity (number of animals) requirement for a medium CAFO.  *Id*. at 5.  However, Defendant argues that Plaintiff cannot, and has not through the Phase I ruling, established that Defendant discharges pollutants into WOTUS, and that such discharge is a necessary component of CAFO status.  *Id.*  Defendant argues that whether the "Unnamed Stream"[6] is a Water of the United States is a temporal issue because sometimes the ditch runs dry.  *Id.* at 7.  However, the Phase I decision already determined the Unnamed Stream was a WOTUS.  Defendant concedes that it "has never been issued a NPDES permit in its own name," but contends that it is operating under a permit issued to Rancho Murieta Community Services District.  ECF No. 133 at 7.

### A.  Scope of the Phase I Ruling

The parties dispute the scope of Magistrate Judge Barnes' prior ruling in favor of Plaintiffs on the Phase I cross-motions for summary judgment.  ECF No. 99.  In that ruling, the Court determined that Plaintiff had standing.  ECF No. 99 at 9.  The Court addressed the standing requirements, and found that the element of injury in fact was supported by the Declaration of Sean Bothwell, Plaintiff's Executive Director.  *Id.* at 6.  The Court found traceability was supported by the expert opinion of Ian Wren.  *Id.* at 7-8.  Redressability was satisfied by the Second Amended Complaint seeking injunctive relief and civil penalties.  *Id.* at 9.

The Court also addressed the WOTUS issue.  The Court found it undisputed that the Consumnes Rivers is a WOTUS.  *Id.* at 10.  Judge Barnes then cited undisputed facts showing that MEC is bordered by the Unnamed Stream that flows for roughly 1.6 miles before draining into the Consumnes River; that MEC "discharges stormwater into Unnamed Stream"; that "such stormwater contains pollutants"; and that water is present in the Unnamed Stream year-round.  *Id.*

---

[6]  Defendant refers to an "Unnamed Ditch," which is discussed as an "Unnamed Stream" in the Phase I summary judgment ruling.  ECF No. 99 at 10-11.

at 10-11.  Based on this evidence, Judge Barnes granted summary judgment for Plaintiff as to WOTUS.  Judge Barnes declined to make an ultimate finding of liability because the parties had limited the issues in Phase I.  *Id.* at 11 n.5.

Defendant now appears to dispute whether Judge Barnes determined the Unnamed Stream was a WOTUS and whether Judge Barnes determined that MEC discharges pollutants into the WOTUS.[7]  Per the parties' stipulated scheduling order, Phase I discovery was "limited to issues related to standing and whether Defendant's **facility discharges pollutants** to Waters of the United States."  ECF No. 41 at 3 (emphasis added).  Plaintiff's Phase I motion for summary judgment (ECF No. 81) argued at significant length that MEC discharged pollutants into WOTUS, arguments supported by numerous facts.  ECF No. 81 at 17-26.  Plaintiff's Phase I motion contained a sub-heading titled: "MEC discharges pollutants to the Unnamed Stream, which is a WOTUS," which was also supported by numerous facts.  *Id.* at 21-26.  Defendant's opposition brief argued that Plaintiff was seeking relief beyond the scope of Phase I by seeking an ultimate finding of liability, but in so doing Defendant acknowledged the proper scope of Phase I was "issues related to standing and whether Defendant's facility discharges pollutants to Waters of the United States."  ECF No. 87 at 20.

Judge Barnes' summary judgment order cited evidence of discharge of pollutants into WOTUS and then granted summary judgment for Plaintiff.  ECF No. 99 at 10-11.  In order to grant summary judgment, Judge Barnes necessarily determined that there was no genuine issue of material fact as to the evidence cited in the summary judgment ruling – which included that the stormwater discharged into the Unnamed Stream contained pollutants.  Those issues have been decided, there was no motion for reconsideration, and the Court declines Defendant's request, made at oral argument, to revisit those issues.  As a result, for purposes of the instant MSJ, the Court has already determined that MEC discharges pollutants into WOTUS.[8]

---

[7]  At oral argument defense counsel agreed that Judge Barnes' summary judgment order did appear to decide that the Unnamed Stream was a WOTUS.

[8]  MEC also relies on a footnote in Judge Barnes' order to argue that discharge of pollutants remains an open question.  That footnote states that the order concerns only two issues, one of which is "whether a water of the United States is at issue in this action."  (ECF No. 99 at 11 n.5.)  However, as described above, the Phase I summary judgment issues were briefed and actually

1      **B. Phase II Issues**

2             The Court then returns to the Phase II issues of (1) whether MEC is a CAFO, and (2)

3      whether MEC is operating without a CWA permit.  Plaintiff contends that the facts needed to

4      establish that MEC is a CAFO are largely, if not entirely, undisputed.  ECF No. 140.  Plaintiff

5      contended at oral argument that there was no dispute as to the numerosity, confinement, and

6      duration requirements.  The Court agrees there is no genuine issue of material fact as to these

7      elements.  Plaintiff also argues that it is undisputed that MEC does not have an NPDES permit.

8      The Court agrees there is no genuine issue of material fact as to that issue.  As to the CAFO

9      determination, Defendant only disputes the element of whether it discharged pollutants into

10     WOTUS.  As to the permit issue, Defendant argues that it is covered by a municipal stormwater

11     permit ("MS4 permit") issued to the Rancho Murieta Community Service District.

12            The CWA "prohibits the 'discharge of any pollutant' by 'any person' from any 'point

13     source' into the navigable waters of the United States except when the discharge is authorized by

14     a permit issued under the National Pollutant Discharge Elimination System."  *Food and Water*

15     *Watch v. U.S. Environmental Protection Agency*, 20 F.4th 506, 508 (9th Cir. 2021).  Under

16     33 U.S.C. § 1362(14), a CAFO qualifies as a "point source." *Id.* at 510, citing § 1362(14) ("The

17     term 'point source' means any discernible, confined and discrete conveyance, including but not

18     limited to any … concentrated animal feeding operation … from which pollutants are or may be

19     discharged.").  The thousands of CAFOs in the United States generate billions of dollars of

20     revenue, and the "EPA has focused on the industry because CAFOs also generate millions of tons

21     of manure," which if improperly managed can pose substantial risks to the environment and

22     public health.  *Waterkeeper Alliance Inc. v. U.S. E.P.A.*, 399 F.3d 486, 492-93 (2nd Cir. 2005).

23            **1.  CAFO**

24            CAFOs are further defined and regulated in the Code of Federal Regulations.  *See* 40

25     C.F.R. § 122.23.  The term "animal feeding operation" means a lot or facility with the following

26     _____

27     decided inclusive of the issue of discharge into a WOTUS.  The undersigned will not read Judge
       Barnes' shorthand reference to "water of the United States" as an implicit limitation on her ruling.
       *Cf. CSX Transp. Inc. v. McBride*, 564 U.S. 685, 714 (2011) (Roberts, C.J., dissenting) (noting that

28     "passing summations" of a legal conclusion "do not alter its holding").

conditions: (1) animals "have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period;" and (2) "[c]rops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing seasons over any portion of the lot or facility." Defendant admits that these requirements are met. Defendant admits that more than 150 horse were stabled at MEC for more than 45 days each year between 2017 and 2023. ECF No. 133-1, Defendant's Response to Plaintiff's Statement of Undisputed Facts, Fact 23. This meets the numerosity requirement for a "medium CAFO," which is defined as having 150 to 499 horses. 40 C.F.R. § 122.23(b)(6)(i)(F). Defendant admits that MEC provides and manages equine boarding and competitions and shows nearly every week throughout the year. ECF No. 133-1, Fact 24. Defendant admits that horses are fed while confined at the facility. *Id.*, Fact 26. Defendant admits that MEC staff collects manure generated by horses at the facility and places it in one of nine uncovered manure bins located on the facility. *Id.*, Fact 30.

The definition of CAFO also requires that pollutants be discharged into WOTUS. *See* 40 C.F.R. 122.23(b)(6)(ii)(A) & (B). As explained above, Defendant disputes whether MEC is discharging pollutants into WOTUS. However, Defendant offers no evidence to dispute Plaintiff's Statement of Undisputed Fact. *See* ECF No. 133-1 (listing no defense evidence in response to any of the 43 facts). Instead, Defendant objects to some of the otherwise undisputed facts concerning pollution discharge with: "Objection. This fact has not been adjudicated." *See for example* ECF No. 133-1, Facts 6 & 7. However, Judge Barnes already adjudicated this fact in favor of Plaintiff in the Phase I summary judgment order. *See* Section IV.A, *supra*.

Even if this remained an open question, summary judgment on the CAFO issue would still be appropriate. Discharge into WOTUS is at issue in the instant briefing by virtue of being part of the CAFO regulation. Defendant offered no evidence in opposition to the MSJ on the issue of discharge, and pointed to none when given the opportunity at oral argument. Thus, the fact that pollutants are discharged is undisputed. Fed. R. Civ. P. 56(e)(2). The record at Phase II again establishes the issue of discharge in favor of Plaintiff.

Defendants also attempt to relitigate the WOTUS issue by arguing that the Unnamed Stream is sometimes dry. ECF No. 133 at 7. The WOTUS issue was decided in Phase I. *See*

16

ECF No. 99 at 10-11.  Additionally, in the Phase II MSJ briefing, Plaintiff asserted, and

Defendant admitted, that: "The Unnamed Stream maintains continuous flows to the Consumnes

River seasonally each year and not solely in response to precipitation."  ECF No. 133-1, Fact 3.

There is no reason to revisit the WOTUS finding made at Phase I.  MEC is a CAFO that

discharges pollutants into WOTUS.

## 2. <u>Permit</u>

The CAFO regulation also contains a permit requirement, which provides:

> Permit Requirement.  A CAFO must not discharge unless the discharge is authorized by
> an NPDES permit.  In order to obtain authorization under an NPDES permit, the CAFO
> owner or operator must either apply for an individual NPDES permit or submit a notice of
> intent for coverage under an NPDES general permit.

40 C.F.R. § 122.23(d)(1).  As this regulation indicates, NPDES permits come in two varieties,

individual and general.  "An individual permit authorizes a *specific* entity to discharge a pollutant

in a *specific* place and is issued after an informal agency adjudication process."  *Natural

Resources Defense Council, Inc. v. EPA*, 279 F.3d 1180, 1183 (9th Cir. 2002) (emphasis added).

General permits "are issued for an entire class of hypothetical dischargers in a given geographical

region and are issued pursuant to administrative rulemaking procedures."  *Id.*  "After a general

permit has been issued, an entity that believes it is covered by the general permit submits a

'notice of intent' to discharge pursuant to the general permit."  *Id.* ‼

‼      It is undisputed that Defendant did not have an individual permit, and Defendant has not

presented evidence it submitted a notice of intent for coverage under a general NPDES permit.

Defendant admits that "[a]t no time has MEC been issued a National Discharge Elimination

System permit."  ECF No. 133-1, Fact 19.  Defendant further admits that at no time has MEC

"been issued a general NPDES permit."  *Id.*, Fact 20.  Further Defendant admits that "MEC has

not been issued a Clean Water Act Phase II MS4 permit by EPA or any state agency."  *Id.*, Fact

21.

As it is undisputed that MEC never obtained a permit in its own name, MEC instead

argues that it "operates within and in accordance with the permit issued to Rancho Murieta

Community Services District (RMCSD)."  ECF No. 133 at 7.  MEC's argument is that it is

effectively a third-party beneficiary of the RMCSD permit.  MEC cites to no case law adopting this permitting concept.  Instead, MEC's briefing is devoted to attempting to distinguish three cases that rejected similar arguments.  *See* ECF No. 133 at 9-12.

However, those cases are not materially distinguishable.  For example, in *San Francisco Baykeeper v. West Bay Sanitary Dist.*, 791 F.Supp.2d 719, 771 (N.D. Cal. 2011), the court addressed whether a defendant may obtain the vicarious benefit of an MS4 permit issued to an entity other than itself.  It found "no authority to support" the defendant's position and that the case law "strongly suggests" the contrary.  *Id.* at 772.  The court concluded: "Permits are thus specific to the discharger."  *Id.*  The Court finds this analysis in *San Francisco Baykeeper* to be persuasive and rejects the argument that RMCSD's permit satisfied MEC's obligations under the CWA.  The Court thus finds MEC's discharge was made without a permit.

### C.        Supplemental *Loper Bright* Briefing

After the close of summary judgment briefing, MEC filed a Notice of Supplemental Authority concerning *Loper Bright Enterprises, et al. v. Raimondo*, 144 S.Ct. 2244 (2024) ("*Loper Bright*") and requested permission to file a supplemental brief.  ECF No. 145.  In *Loper Bright*, the Supreme Court overruled the requirement that courts "defer to 'permissible' agency interpretations of the statutes those agencies administer" established by *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  *Id*. at 2254.  This Court granted the request and the parties filed supplemental briefs.  ECF No. 147.

MEC asks the Court to find that the CAFO regulations "exceed[] the authority delegated by Congress in the CWA "as applied to horse show facilities" like MEC.  ECF No. 151 at 4.  MEC argues that the text and legislative history of the CWA demonstrate that horse show facilities should not fall under the CAFO regulations.  *Id*. at 12.  MEC contends that the "EPA's application of its CAFO regulations and guidance to horse facilities exceeded the bounds of the authority delegated to it, because there is no evidence that Congress ever intended for the CWA's point source provisions to apply to horse show facilities or to horses generally."  *Id*.  MEC also argues that the CAFO regulations are "arbitrary and capricious" "to the extent they apply to MEC and other horse show facilities" and "are therefore invalid."  *Id*. at 13.

1    Plaintiff argues that *Loper Bright* has no effect on the pending litigation.  ECF No. 152.

2  Plaintiff asserts this is not a lawsuit challenging the validity of federal agency rules or regulations,

3  and that if Defendant wished to raise such a challenge, it was required to follow certain rules.

4  ECF No. 152 at 2.  For example, the CWA provides that challenges to regulations adopted by the

5  EPA under the CWA "shall be made within 120 days from the date of such … promulgation … or

6  after such date only if such application is based solely on grounds which arose after such 120th

7  day." 33 U.S.C. § 1369(b)(1).  The CWA further provides that any such regulation "shall not be

8  subject to judicial review in any civil or criminal proceeding for enforcement." 33 U.S.C.

9  § 1369(b)(2).  Plaintiff argues that *Loper Bright* therefore has no application because MEC filed

10  no timely complaint challenging the CAFO regulations.  ECF No. 152 at 6.

11    Plaintiff also filed an "evidentiary objection" to Defendant's supplemental filing.  ECF

12  No. 153.  Plaintiff contends that the Declaration of Jay Patterson and supporting exhibits (at ECF

13  No. 151-1 & 151-2) do not constitute the administrative record before the EPA when the CAFO

14  regulations were adopted and are inadmissible hearsay and should be excluded.  The Court agrees

15  that the Declaration exceeds the scope of the supplemental briefing order and applicable rules.

16  Pursuant to Local Rule 230(m), "[a]fter a reply is filed, no additional memoranda, papers, or other

17  materials may be filed without prior Court approval," except as provided at Local Rule 230(m)(1)

18  & (2).  Here, the Court did not allow the parties to file additional exhibits, only a brief not to

19  exceed 10 pages.  The summary judgment evidentiary record was already closed, and it was not

20  appropriate to file 65 pages of exhibits without leave of Court.  However, because Defendant's

21  *Loper Bright* challenge is precluded by the CWA's provisions concerning judicial review of

22  regulations issued under the CWA, the Court need not decide whether that record should

23  nonetheless be considered.

24    Section 1369 precludes the Court from reviewing the validity of the CAFO regulations at

25  this point and in this civil enforcement proceeding.  Under § 1369(b)(1), review of agency action

26  "approving or promulgating any effluent limitation or other limitation under section 1311, 1312,

27  1316, or 1345," may be had in the Circuit Court of Appeals if made within 120 days of the

28  determination, approval, promulgation, issuance or denial.  The EPA issued the operative CAFO

regulation, 40 C.F.R. § 122.23, in 2012, in response to a 2011 appellate court decision

invalidating part of the previous version of that regulation.  *See* 77 Fed. Reg. 44494-1 (July 30,

2012); *National Pork Producers Council v. EPA*, 635 F.3d 738, 756 (5th Cir. 2011).  EPA issued

that regulation as an effluent limitation under 33 U.S.C. § 1311 and the other statutes identified in

§ 1369(b)(1).  *See* 77 Fed. Reg. 44494-1, at 44495 (citing back to the 2008 version of the CAFO

regulation as an "effluent limitation"); 73 Fed. Reg. 70418-01 (Nov. 20, 2008) (mentioning

effluent limitations 94 times in explanation of revision to CAFO regulation).  In short, the CAFO

regulation falls squarely within § 1369(b)(1), which generally requires that judicial review be

sought within 120 days of the issuance of a contested regulation.[9]

Defendant cannot collaterally challenge the CAFO regulation as a defense in this civil

action.  The CWA provides that for a regulation which could have been reviewed under §

1369(b)(1), such regulation "shall not be subject to review in any civil or criminal enforcement

proceeding."  33 U.S.C. § 1369(b)(2); *see also PDR Network, LLC v. Carlton & Harris*

*Chiropractic*, 588 U.S. 1, 14 (2019) (Kavanaugh, J., concurring) (describing the CWA as a statute

that "expressly preclude[s] judicial review in subsequent enforcement actions" and citing §

1369(b)(2)).

Defendant contended at oral argument that its challenge to the CAFO regulation is

nonetheless authorized by *Corner Post, Inc. v. Board of Governors of Federal Reserve*, 144 S.Ct.

2440 (2024).  *Corner Post* held that the Administrative Procedure Act's ("APA") general six-year

statute of limitations "does not begin to run" until an APA plaintiff "suffers an injury from final

agency action[.]"  *Id*. at 2451.  However, that holding does not held Defendant overcome §

1369's barriers to judicial review under the present circumstances.  Defendant is not a plaintiff

seeking relief under the APA.  But even if Defendant were in such a position, *Corner Post*

---

[9]  Litigants have successfully sought review of the CAFO regulation under this expedited review
scheme by timely filing petitions for review with federal courts of appeal.  *See National Pork*
*Producers Council*, 635 F.3d at 748 ("As required by the APA, on April 12, 2009, within 120
days of the issuance of the guidance letters, the Poultry Petitioners filed their petition for review,
challenging the EPA Letters."); *Waterkeeper Alliance, Inc. v. EPA*, 399 F.3d 486 (2d Cir. 2005)
(multiple petitions for review docketed by various interest groups within 120 days of
promulgation of new CAFO rule on February 12, 2003).

1    expressly stated that the provision there at issue, 28 U.S.C. § 2401(a), applied generally to suits

2    against the United States *unless* displaced by a more specific statute, and cited to 33 U.S.C. §

3    1369(b) as one such example.  144 S.Ct. at 2450.  Defendant's challenge to the CAFO regulation

4    at this point is untimely under § 1369(b)(1) and precluded by § 1369(b)(2).

5           **V.      Remedies**

6           Having found that Plaintiff is entitled to summary judgment on the Phase II issues and,

7    accordingly, to summary judgment on MEC's liability for violating the CWA, the Court must

8    now consider remedies.  At oral argument, Plaintiff requested that the Court immediately enter an

9    injunction ordering MEC to cease discharging wastewater without a permit in violation of the

10   CWA.  The parties have not briefed the propriety and scope of injunctive relief.  While the entry

11   of an injunction may be appropriate, the parties should first confer on the parameters of any

12   injunction.  If the parties are unable to agree on the parameters of an injunction, they should then

13   submit, by December 5, 2024, a joint statement with their respective positions as to whether an

14   injunction should issue and, if so, what specifically should be enjoined.  The Court will set a

15   hearing for December 12, 2024 at 10 a.m. to evaluate the parties' positions, though it may decide

16   the issue without hearing after reviewing the joint statement.

17          Civil fines are also available for violations of the CWA.  As to fines, Plaintiff contends

18   that MEC discharged pollutants at least on every day when there was 0.2 inches or more of rain

19   since February 6, 2015.  Defendant does not dispute that Plaintiff conducted two "wet weather

20   inspections" of MEC, and collected water samples, and "[e]very sample collected contained

21   pollutants at significant levels."  ECF No. 133-1, Facts 14-16.  Defendant also does not dispute

22   that: "Local weather station rain data shows 254 days of rain of 0.2 inches or more going back to

23   February 6, 2015."  *Id.*, Fact 17.  However, the parties have not briefed the question of what fines

24   may be appropriate under the circumstances.  Now that Ms. Ward is being added to the case, it

25   would be prudent to allow her to be served and appear in the case before setting a timeline for

26   further proceedings concerning fines.

27   ////

28   ////

1

### VI.   Conclusion

2

Accordingly, **IT IS HEREBY ORDERED** that:

3

1.  Plaintiff's Motion for Leave to File a Third Amended Complaint (ECF No. 113) is

4

**GRANTED**.  Plaintiff shall file the TAC **within 7 days** of the entry of this Order.

5

2.  Plaintiff's Motion for Summary Judgment (ECF No. 115) is **GRANTED**.  The Court

6

finds that MEC is a CAFO and has discharged pollutants into WOTUS without an NPDES

7

permit.

8

3.  Plaintiff's Motion in Limine (ECF No. 118) is **DENIED** without prejudice.

9

4.  The parties shall meet and confer on the parameters of injunctive relief to implement

10

the Court's summary judgement orders.  If the parties are unable to agree on an appropriate

11

injunction, they shall file **by December 5, 2024**, a joint statement with their respective positions

12

as to whether an injunction should issue and, if so, what specifically should be enjoined.  The

13

parties should not seek to relitigate liability questions in that joint statement.  A hearing

14

concerning injunctive relief is hereby set for **December 12, 2024 at 10:00 a.m.**

15

5.  A Status Conference is hereby set for **January 22, 2025, at 10:00 a.m.**  On or before

16

January 8, 2025, the parties shall file a Joint Status Report and proposed schedule for any further

17

discovery on remaining issues including RCOD and alter ego theory of liability.

18

Dated:  November 18, 2024

19

20

21

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28