JASON R. FLANDERS (Bar No. 238007)
Email: jrf@atalawgroup.com
ERICA A. MAHARG (Bar No. 279396)
Email: eam@atalawgroup.com
J. THOMAS BRETT (Bar No. 315820)
Email: jtb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
8 Rio Vista Ave.
Oakland, CA 94611
Telephone: (916) 202-3018

DREVET HUNT, SBN 240487
Email: dhunt@cacoastkeeper.org
CALIFORNIA COASTKEEPER ALLIANCE
1100 11th Street, 3rd Floor
Sacramento, CA 95814
Telephone: (415) 606-0864

Attorneys for Plaintiff CALIFORNIA COASTKEEPER ALLIANCE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA COASTKEEPER ALLIANCE,<br><br>     Plaintiff,<br><br> v.<br><br>COSUMNES CORPORATION dba MURIETA EQUESTRIAN CENTER, a California Corporation; CAROL ANDERSON WARD, an individual; CAROL ANDERSON WARD, as trustee of the Carol Anderson Ward Trust dated February 6, 2002,<br><br>     Defendants. | Case No. 2:20-CV-01703-SCR<br><br>**PLAINTIFF'S MOTION FOR INTERIM AWARD OF FEES AND COSTS**<br><br>Hearing Date: June 12, 2025<br>Time: 10:00 AM<br>Courtroom: 27, 8th Floor<br>Hon. Sean Riordan |

**NOTICE OF MOTION AND MOTION FOR INTERIM AWARD OF FEES AND COSTS**

PLEASE TAKE NOTICE that on June 12, 2025, or as soon thereafter as the matter may be heard, the California Coastkeeper Alliance ("Plaintiff" or "the Alliance") will move for an award of attorneys' fees and costs incurred against Defendants Cosumnes Corporation d/b/a Murrieta Equestrian Center ("Defendant" or "MEC") under 33 U.S.C. § 1365(d), on the grounds that the Court's Order Granting the Alliance's Motion for Summary Judgment means the Alliance is a prevailing party and an award of fees is appropriate at this time in this case.

This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities supporting the motion; the supporting declarations and exhibits; all of the pleadings and papers on file in this matter; and on oral or documentary evidence that may be presented at the hearing. Pursuant to Local Rule 54-5(b), the supporting declarations filed by Plaintiff's counsel include a description of and time spent on the services rendered and the qualifications and reasonable hourly rate for each person for which the Alliance seeks recovery. Pursuant to Local Rule 7-2 (c) a proposed order is filed concurrently with this Motion.

Respectfully submitted,

Dated: April 18, 2025                    AQUA TERRA AERIS LAW GROUP

/s/ Jason R. Flanders
Jason R. Flanders

Attorneys for Plaintiff
CALIFORNIA COASTKEEPER ALLIANCE

**PLAINTIFF'S MOTION FOR INTERIM AWARD OF FEES AND COSTS**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS .................................................................................. 2

    A.  The Alliance's Investigation and Initiation of This Action. ......................... 2

    B.  The Court's Summary Judgment Orders .................................................... 2

    C.  Time Spent Litigating this Action Through Summary Judgment ............... 3

III. LEGAL BACKGROUND ................................................................................... 4

    A.  The Clean Water Act .................................................................................. 4

    B.  Legal Standards for an Award of Interim Fees and Costs ......................... 5

    C.  Eastern District Local Rules for Fee Awards ............................................ 6

IV. ARGUMENT ..................................................................................................... 7

    A.  The Alliance Is a Prevailing Party Because It Established MEC's Liability for Violating the CWA. ............................................................................................................. 7

    B.  An Interim Award of the Alliance's Litigation Fees and Costs is Appropriate Because the Alliance's Citizen Enforcement Action Advances the Purposes of the Clean Water Act. ...... 8

    C.  The Fees and Costs the Alliance Seeks to Recover for Initiating and Litigating its Enforcement Action Against MEC are Reasonable ..................................................... 9

        1.  The Time Spent Initiating the Alliance's Factually and Legally Complex Citizen Enforcement Action is Reasonable and Recoverable. ...................................... 11

        2.  Time Spent Litigating the Alliance's Factually and Legally Complex Citizen Enforcement Action is Reasonable and Recoverable. ...................................... 11

        3.  The Alliance Achieved Excellent Results .................................................. 15

        4.  MEC Needlessly Multiplied the Alliance's Fees and Costs. ...................... 16

        5.  The Costs Associated with Plaintiff's Expert Testimony Incurred through Phase II Summary Judgment Are Reasonable and Recoverable. .................................. 17

        6.  The Other Costs Requested Are Typically Incurred and Are Recoverable. ............ 18

    D.  The Alliance's Attorneys' Rates Are Reasonable. ................................... 19

V.  CONCLUSION ................................................................................................ 20

**PLAINTIFF'S MOTION FOR INTERIM AWARD OF FEES AND COSTS**

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

*Animal Lovers Volunteer Ass'n v. Carlucci*
 867 F.2d 1224 (9th Cir. 1989) ........................................................................... 7

*Arriola v. Kentucky*
 2018 U.S. Dist. LEXIS 210299 (E.D. Ky. Dec. 13, 2018) .......................................... 15

*Barbosa v. Cargill Meat Sols. Corp.*
 297 F.R.D. 431 (E.D. Cal. 2013) ........................................................... 19

*Blanchard v. Bergeron*
 489 U.S. 87 (1989) ............................................................................... 5

*Blum v. Stenson*
 465 U.S. 886 (1984) .............................................................................. 19

*Bond v. Ferguson Enters.*
 2011 U.S. Dist. LEXIS 70390 (E.D. Cal. 2011) ............................................ 19

*Bradley v. Richmond Sch. Bd.*
 416 U.S. 696 (1974) ................................................................... 5, 8, 9

*City of Riverside v. Rivera*
 477 U.S. 561 (1986) .............................................................................. 15

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*
 2001 U.S. Dist. LEXIS 3579 (E.D. Wash. Feb. 27, 2001) .......................... 17, 18

*Cty. of Maui v. Haw. Wildlife Fund*
 590 U.S. 165 (2020) .............................................................................. 13

*Doe v. Cty. of Sacramento*
 No. 2:21-cv-01438-MCE-CKD, 2024 U.S. Dist. LEXIS 83141 (E.D. Cal. 2024)...................... 19

*Earth Island Inst. v. So. Cal. Edison*
 92 F. Supp. 2d 1060 (S.D. Cal. 2000)............................................................. 5, 9

*Fair Hous. of Marin v. Combs*
 285 F3d 899 (9th Cir 2002) ................................................................. 10

*Franco v. Ruiz Food Prods.*
 2012 U.S. Dist. LEXIS 169057 (E.D. Cal. 2012) ................................................ 19

*Friends of the Earth v. Carey*
 535 F.2d 165 (2d Cir. 1976) ................................................................. 4

**PLAINTIFF'S MOTION FOR INTERIM AWARD OF FEES AND COSTS**

*Friends of the Earth v. Laidlaw*
    528 U.S. 167 (2000)........................................................................................5

*Garcia v. Gordon Trucking, Inc.*
    2012 U.S. Dist. LEXIS 160052 (E.D. Cal. 2012)..........................................19

*Gates v. Deukmejian*
    987 F.2d 1392 (9th Cir. 1992).......................................................................15

*Graham v. DaimlerChrysler Corp.*
    34 Cal.4th 553 (2004)...................................................................................19

*Hanrahan v. Hampton*
    446 U.S. 754 (1980)........................................................................................5

*Hensley v. Eckerhart*
    461 U.S. 424 (1983)....................................................................................9, 10

*Herrington v. Cnty. of Sonoma*
    883 F.2d 739, 744 (9th Cir. 1989).................................................................6, 8

*In re Immune Responses Secs. Litigation*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007).........................................................18

*Irvine Unified Sch. Dist. v. K.G.*
    853 F3d 1087 (9th Cir 2017).........................................................................10

*Keithley v. Homestore.com, Inc.*
    2009 U.S. Dist. LEXIS 2720 (N.D. Cal. Jan. 7, 2009)....................................9

*Loper Bright Enters. v. Raimondo*
    603 U.S. 369, 377 (2024).................................................................3, 14, 15, 16

*Marks v. Clarke*
    102 F.3d 1012 (9th Cir. 1996).........................................................................5

*Missouri v. Jenkins*
    491 U.S. 274 (1989)......................................................................................20

*Mokelumne River v. East Bay Mun. Utility Dist.*
    13 F.3d 305 (9th Cir. 1993), cert. denied, 115 S. Ct. 198 (1994).....................4

*Moreno v. City of Sacramento,*
    534 F.3d 1106 (9th Cir 2008)....................................................................10, 20

*National Wildlife Fed'n v. Hanson*
    859 F.2d 313 (4th Cir. 1988).........................................................................5, 8

*Natural Res. Def. Council, Inc. v. U.S. Envt'l Prot. Agency*
    966 F.2d 1292 (9th Cir. 1992).......................................................................7, 8

**PLAINTIFF'S MOTION FOR INTERIM AWARD OF FEES AND COSTS**

*O'Bannon v. NCAA*
  114 F. Supp. 3d 819 (N.D. Cal. 2015) .................................................................. 15

*Perdue v. Kenny A*
  559 U.S. 542 (2010) .......................................................................................... 20

*Proffitt v. Mun. Auth. of Borough of Morrisville*
  716 F. Supp. 837 (E.D. Pa 1989) ........................................................................ 4

*Resurrection Bay Conservation All. v. City of Seward*
  640 F.3d 1087 (9th Cir. 2011) .................................................................... 5, 6, 8

*Riverside v. Rivera*
  477 U.S. 561, 580 (1986) .................................................................................. 16

*Roberts v. City & County of Honolulu*
  938 F3d 1020 (9th Cir. 2019) ............................................................................ 10

*Sackett v. EPA*
  598 U.S. 651 (2023) ................................................................... 3, 13, 14, 15

*Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*
  574 F.3d 1054 (9th Cir. 2009) ...................................................................... 5, 7, 8

*San Francisco Baykeeper v. Tosco Corp.*
  309 F.3d 1153 (9th Cir. 2002) ............................................................................. 4

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*
  2011 U.S. Dist. LEXIS 138093, 54 (N.D. Cal. 2011) ................................... 5, 7, 8

*Sierra Club v. Chevron U.S.A., Inc.*
  834 F.2d 1517 (9th Cir. 1987) ...................................................................... 4, 14

*Sierra Club v. U.S. Envt'l Prot. Agency*
  625 F. Supp. 2d 863 (N.D. Cal. 2007) ............................................................... 11

*Sierra Club v. Union Oil Co.*
  716 F. Supp. 429 (N.D. Cal. 1989) ..................................................................... 4

*Steffel v. Thompson*
  415 U.S. 452 (1974) ........................................................................................ 7, 8

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*
  489 U.S. 782, 783 (1989) .................................................................................... 5

*United Steelworkers of Am. v. Phelps Dodge Corp.*
  896 F.2d 403 (9th Cir. 1990) ............................................................................. 19

*Valdivia v. Brown*
  848 F. Supp. 2d 1141 (E.D. Cal. 2011) ............................................................. 20

**PLAINTIFF'S MOTION FOR INTERIM AWARD OF FEES AND COSTS**

*Vargas v. Howell*
    949 F3d 1188 (9th Cir. 2020) ............................................................................... 10

*Webb v. Cnty. Bd. of Educ.*
    471 U.S. 234 (1985)............................................................................................... 11

**Federal Statutes**

28 U.S.C. § 1924............................................................................................................. 6

33 U.S.C. § 1251(a)(1)..................................................................................................... 4

33 U.S.C. § 1311(a) ........................................................................................................ 8

33 U.S.C. § 1319(d) ...................................................................................................... 18

33 U.S.C. § 1365 (d) ................................................................................................. 5, 17

33 U.S.C. § 1365(a)(1)..................................................................................................... 4

33 U.S.C. § 1365(f).......................................................................................................... 4

**Federal Rules**

Fed. R. Civ. P.  34 ............................................................................... 3, 12, 16, 17

**Eastern District of California Local Rules**

L.R. 292 ........................................................................................................................... 6

L.R. 292(f) ....................................................................................................................... 6

L.R. 293 ..................................................................................................................... 6, 10

L.R. 293(b)....................................................................................................................... 6

L.R. 293(c)....................................................................................................................... 6

L.R. 293(c)(1)................................................................................................................. 10

**PLAINTIFF'S MOTION FOR INTERIM AWARD OF FEES AND COSTS**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff California Coastkeeper Alliance ("the Alliance") achieved an important victory in this lawsuit, advancing its ongoing effort to compel Clean Water Act ("CWA") permitting for "non-dairy" concentrated animal feeding operations ("CAFO") in California, and to reduce bacteria contamination in the Cosumnes River. The Alliance sought to hold Defendant Cosumnes Corporation d/b/a Murieta Equestrian Center ("MEC") accountable for discharging polluted stormwater and process wastewater to the Cosumnes River and its tributary without a CWA permit. In the orders granting the Alliance's two motions for summary judgment (ECF 99 ["Phase I Summary Judgment Order"] and ECF 158 ["Phase II Summary Judgment Order"] collectively the "Summary Judgment Orders"), this Court declared: the Alliance has Article III standing, MEC discharges pollutants into waters of the United States, the MEC facility constitutes a CAFO, MEC does not possess a CWA permit, and that permanent injunctive relief is warranted. The Alliance is therefore a prevailing party entitled to recover reasonable attorneys' and expert fees.

Nearly *five years* of litigation, plus pre-litigation investigation, were needed to achieve this result. Since late 2018, the Alliance and its outside counsel have performed over 3645 hours of work covered by this motion[1] on a purely contingency fee basis, totaling $1,932,065.65 million in attorneys' fees, and have incurred $126,975.17 in expert fees and litigation costs. Declaration of Jason R. Flanders in Support of Motion for Interim Award of Fees and Costs ("Flanders Decl.") ¶¶ 4, 24 and Exhibit 1; Declaration of Drevet Hunt in Support of Motion for Interim Award of Fees and Costs ("Hunt Decl.") ¶¶ 57-59 and Exhibits 2-16. The Alliance's lead counsel have carefully reviewed all timeslips kept for this matter to exercise billing judgment, writing off 493.5 hours (13.55%) totaling $218,368 in fees (11.3%), and accordingly now seek fee recovery from Defendant Cosumnes Corporation in the amount of $1,713,697.60.

---

[1] Expressly reserved from this motion are time and expense related to the CWA 60-day notice of intent to sue Carol Anderson Ward and the Carol Anderson Ward Trust; drafting, filing, and serving the Third Amended Complaint; case management and settlement time subsequent to this Court's Phase II order granting summary judgment; and, this motion. Ward Defendants' liability for all fees will be determined at a subsequent stage of this case.

Interlocutory compensation is supported by Ninth Circuit precedent and is particularly proper here because: 1) the Alliance is a non-profit organization that is 2) represented by counsel on a contingency basis and 3) the lawsuit advances the purposes of the Clean Water Act to restore and maintain the integrity of the nation's waterways. Further, interim payment will ensure a level playing field between the parties in this case, rather than a battle of attrition between entities with unequal financial resources. The Alliance is seeking only the fees and costs necessarily and reasonably incurred in the course of achieving liability and injunctive relief. The Alliance's requested interim fee and cost award is fully supported in fact and law and should be granted.

## II.   STATEMENT OF FACTS

### A.  THE ALLIANCE'S INVESTIGATION AND INITIATION OF THIS ACTION.

Using law, policy, and science, the Alliance advances statewide programs for healthy and clean waters in California. The Alliance works with other Waterkeeper organizations in California to develop, implement, and defend policies that meet the needs of California's distinct communities and ecosystems. The Alliance also provides the public with the tools and information needed to hold decisionmakers accountable and to be effective local water stewards. ECF 81-2 ¶ 8. As part of this, the Alliance has worked to reduce the negative impacts that non-dairy CAFOs, such as equestrian facilities, have on California's water quality. ECF 81-2 ¶ 9. In early 2020, the Alliance's Executive Director, Sean Bothwell, began working with Alliance staff and outside counsel to investigate whether MEC was in compliance with the CWA. Photographs and information provided by Alliance staff confirmed Mr. Bothwell's concerns that the MEC Facility was operating illegally as a non-dairy CAFO without CWA permit coverage. ECF 81-2 ¶¶ 20-21.

### B.  THE COURT'S SUMMARY JUDGMENT ORDERS

Following extensive Phase I fact and expert discovery, the Phase I Summary Judgment Order held that the Alliance meets the requirements for Article III standing (ECF 99 at 6-9); and that the MEC Facility discharges pollutants to waters of the United States – to wit, the Unnamed Stream bordering the MEC Facility, and the Cosumnes River (ECF 99 at 7-11). The Court also wholly denied Defendants' cross motion for summary judgment. ECF 99 at 11.

1   Following a somewhat shorter Phase II fact and expert discovery, this court's Phase II

2   Summary Judgment Order held that the MEC Facility constitutes a CAFO (ECF 158 at 15-17); that

3   MEC discharges pollutants to Waters of the United States without a CWA permit (ECF 158 at 17-

4   18); and that injunctive relief is required (ECF 158 at 21; ECF 170).

5   **C. TIME SPENT LITIGATING THIS ACTION THROUGH SUMMARY JUDGMENT**

6   To prevail on two motions for summary judgment, and two motions to amend the complaint,

7   the Alliance was required to conduct *extensive* work to investigate, file, and prosecute this case,

8   which can be summarized and generally categorized as follows:

9   (1) commencement of the lawsuit, including investigation, pre-complaint research, drafting

10   and transmitting the statutorily required notices of suit, and the drafting and filing of the

11   Complaint and First Amended Complaint between November 2018 and October 2020;

12   (2) Phase I discovery, including written discovery, document review of over 122,000 pages

13   produced by Defendants, documents produced by regulatory agencies, numerous discovery

14   meet and confer processes, informal discovery dispute resolution (including hearings before

15   Magistrate Judge Barnes), negotiating a stipulation of facts, seven fact and expert

16   depositions, expert discovery, two Rule 34 wet weather site inspections, multiple field

17   observations, and stormwater sampling;

18   (3) Phase I motion practice, including preparing the Alliance's Motion for Leave to File a

19   Second Amended Complaint and the reply related thereto, preparing an opposition to

20   Defendants' Motion to Defer or Stay Briefing on Phase One waters of the United States

21   Issues, and preparing and responding to Phase I motions for summary judgment, including

22   supplemental briefing related to the United States Supreme Court's decision in *Sackett v.*

23   *EPA*, 598 U.S. 651, 657 (2023) ("*Sackett*"), which revised the scope of CWA jurisdiction;

24   (4) Phase II discovery, including written discovery, document review, meet and confer

25   processes, informal discovery dispute resolution, six fact and expert depositions, expert

26   discovery, and one Rule 34 dry weather site inspection;

27   (5) Phase II motion practice, including preparing Plaintiff's Motion for Leave to File a Third

28   Amended Complaint and preparing the reply brief related thereto, preparing the Alliance's

3

1   Phase II motion for summary judgment, reply related thereto, supplemental briefing related

2   to *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 377 (2024), which overruled the

3   *Chevron* doctrine, and oral argument;

4   (6) Continuous case management, strategy, and planning; and

5   (7) Mediation and settlement negotiations, including two (multi-session) settlement

6   conferences with Magistrate Judge Newman, one (multi-session) private mediation with

7   Judge Newman after he retired; and multiple independent efforts at settlement.

8   To date, ten opposed motions have been filed (by any party) in this case (not including

9   informal discovery dispute resolution), and the Alliance has prevailed on *all* except for its Motion *in*

10   *Limine* to Exclude the Expert Testimony of Timothy Swickard, which was denied *without* prejudice

11   as premature, and MEC's request for an extension of time to respond to the same.

### III. LEGAL BACKGROUND

#### A.  THE CLEAN WATER ACT

14   Congress enacted the Clean Water Act to "restore and maintain the chemical, physical and

15   biological integrity of the Nation's waters." 33 U.S.C. § 1251(a)(1). To effectuate this mandate,

16   "the Act categorically prohibits any discharge of a pollutant from a point source without a [CWA]

17   permit." *Mokelumne River v. East Bay Mun. Utility Dist.,* 13 F.3d 305, 308 (9th Cir. 1993), cert.

18   denied, 115 S. Ct. 198 (1994) (modifications added). Under CWA section 505, citizens have the

19   power to enforce CWA provisions against any person, including a corporation, for unpermitted

20   discharges of pollutants. *See* 33 U.S.C. § 1365(a)(1) and (f); *see also Sierra Club v. Union Oil Co.,*

21   716 F. Supp. 429, 433 (N.D. Cal. 1989). It was "Congress' clear intention … that citizen plaintiffs

22   are not to be treated as 'nuisances or troublemakers' but rather as 'welcomed participants in the

23   vindication of environmental interests.'" *Proffitt v. Mun. Auth. of Borough of Morrisville,* 716 F.

24   Supp. 837, 844 (E.D. Pa 1989) (quoting *Friends of the Earth v. Carey,* 535 F.2d 165, 172 (2d Cir.

25   1976)); *see also Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517, 1525 (9th Cir. 1987)

26   (underscoring that citizen suits perform important public function).

27   To encourage citizen enforcement, Congress enacted a fee-shifting provision, allowing

28   plaintiffs to recover their litigation costs, including reasonable attorney and expert witness fees. *San*

1   *Francisco Baykeeper v. Tosco Corp.,* 309 F.3d 1153, 1156 (9th Cir. 2002) ("The citizen suit

2   provision allows plaintiffs to seek injunctive relief, civil penalties, and attorneys' fees.") (quoting

3   *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 175 (2000)). Section 505(d) provides:

4       The court, in issuing any final order in any action brought pursuant to this section,
        may award costs of litigation (including reasonable attorney and expert witness
5       fees) to any prevailing or substantially prevailing party, whenever the court
        determines such award is appropriate.
6

7   33 U.S.C. § 1365 (d).

8   ### B. LEGAL STANDARDS FOR AN AWARD OF INTERIM FEES AND COSTS

9       "[A] party may obtain attorney's fees once the party prevails on the merits as to one or more

10  of its claims." *San Francisco Baykeeper v. W. Bay Sanitary Dist.,* 2011 U.S. Dist. LEXIS 138093,

11  *5 (N.D. Cal. 2011) ("*West Bay*"). Establishing defendants' liability at summary judgment makes a

12  plaintiff a prevailing party entitled to move for an award of fees and costs. *Marks v. Clarke,* 102

13  F.3d 1012, 1034 (9th Cir. 1996). Even minor relief can create prevailing party status. *Saint John's*

14  *Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059–60 (9th Cir. 2009).

15  This was Congress' specific intent. *Id.* at 1061 ("The purpose of an award of costs and fees is . . . to

16  encourage the achievement of statutory goals[.]"); *see also*, *Tex. State Teachers Ass'n v. Garland*

17  *Indep. Sch. Dist.*, 489 U.S. 782 (1989) (prevailing party status alters the legal relationship between

18  the parties "in a manner which Congress sought to promote in the fee statute").

19      An interim award of reasonable attorneys' fees and costs is especially appropriate where a

20  party is a non-profit group implementing a public interest statute with citizen-suit and fee shifting

21  provisions. *See West Bay,* 2011 U.S. Dist. LEXIS 138093, * 5; *Hanrahan v. Hampton,* 446 U.S.

22  754, 756 (1980); *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 723 (1974) (delaying fee award

23  increases hardship to plaintiff and discourages purpose of fee shifting statute); *National Wildlife*

24  *Fed'n v. Hanson,* 859 F.2d 313, 316 (4th Cir. 1988); *Earth Island Inst. v. So. Cal. Edison,* 92 F.

25  Supp. 2d 1060, 1066 (S.D. Cal. 2000).

26      Once a party attains "prevailing" status, the Court should award fees and costs absent special

27  circumstances. *Resurrection Bay Conservation All. v. City of Seward,* 640 F.3d 1087, 1092 (9th Cir.

28  2011); *West Bay*, 2011 U.S. Dist. LEXIS 138093, *15–16; *Blanchard v. Bergeron,* 489 U.S. 87, 89

n.1 (1989). A party opposing an award of fees and costs bears the burden to make a strong showing

of special circumstances warranting a denial of a fee award. *Herrington v. Cnty. of Sonoma,* 883

F.2d 739, 744 (9th Cir. 1989); *see also Resurrection Bay Conservation All.,* 640 F.3d at 1092. The

court's discretion to deny a fee award to a prevailing plaintiff is narrow, and denial is "extremely

rare." *St. John's,* 574 F.3d at 1062–64; *Resurrection Bay Conservation All.*, 640 F.3d at 1092.

## C.  EASTERN DISTRICT LOCAL RULES FOR FEE AWARDS

The Eastern District local rules follow the Federal standards discussed, above. Local Rule

293 guides the award of attorneys' fees, and requires "an affidavit showing: (1) that the moving

party was a prevailing party . . . ; (2) that the moving party is eligible to receive an award of

attorneys' fees, and the basis of such eligibility; (3) the amount of attorneys' fees sought; (4) the

information pertaining to each of the criteria set forth in (c) [discussed below]; and (5) such other

matters as are required under the statute under which the fee award is claimed." L.R. 293(b).

Further, the court must consider: "(1) the time and labor required of the attorney(s); (2) the novelty

and difficulty of the questions presented; (3) the skill required to perform the legal service properly;

(4) the preclusion of other employment by the attorney(s) because of the acceptance of the action;

(5) the customary fee charged in matters of the type involved; (6) whether the fee contracted

between the attorney and the client is fixed or contingent; (7) any time limitations imposed by the

client or the circumstances; (8) the amount of money, or the value of the rights involved, and the

results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the

"undesirability" of the action; (11) the nature and length of the professional relationship between

the attorney and the client; (12) awards in similar actions; and (13) such other matters as the Court

may deem appropriate . . . ." L.R. 293(c).

Likewise, pursuant to Local Rule 292, requests for reimbursement of costs must "itemize the

costs claims" in conformance with 28 U.S.C. § 1924 and must "be supported by a memorandum of

costs and an affidavit of counsel that the costs claimed are allowable by law, are correctly stated,

and were necessarily incurred." The following cost items, among others, are taxable in the Eastern

District: (1) Clerk's fees; (2) Court reporter's fees; (3) Docket fees; (4) Fees for exemplification and

copies of papers necessarily obtained for use in the action; and, (5) Other items allowed by any

1    statute or rule or by the Court in the interest of justice. L.R. 292(f).

2                                **IV.  ARGUMENT**

3           By establishing Defendant's liability for violating the CWA, and securing injunctive relief,

4    the Alliance is a prevailing party, and an award of attorneys' fees and costs is appropriate. Interim

5    relief is justified given: 1) the length of time this litigation has been pending; 2) the likely additional

6    time until a final judgment and remedy (including on penalties) is ordered; 3) the Alliance's status

7    as a non-profit citizen plaintiff group working on a wholly contingent basis; and 4) the enforcement

8    has advanced the purposes of the CWA. Plaintiff's counsels' fees and costs were reasonably

9    incurred, their rates are consistent with the local market, and the motion should be granted.

10

11          A.  **THE ALLIANCE IS A PREVAILING PARTY BECAUSE IT ESTABLISHED MEC'S LIABILITY FOR VIOLATING THE CWA.**

12          A party prevails when it succeeds on one or more of its claims on the merits. *St. John's,* 574

13   F.3d at 1059 ("The threshold for sufficient relief to confer prevailing party status is not high.");

14   *West Bay*, 2011 U.S. Dist. LEXIS 138093*14. The Alliance's operative Complaint ask the Court to

15   declare that Defendants "have violated, and continues to be in violation of, Section 301(a) of the

16   CWA, 33 U.S.C. § 1311, for their unpermitted discharges of process wastewater, stormwater, and

17   pollutants into the waters of the Unites States, including the Cosumnes River, in violation of the

18   substantive and procedural requirements of the CWA." ECF 173 ¶ 109. The Alliance achieved this

19   precise relief. ECF 158 at 22:5–7, and 15-18 ("Plaintiff's motion for summary judgment (ECF No.

20   115) is GRANTED: The Court finds that MEC is a CAFO and has discharged pollutants into

21   WOTUS without an NPDES permit."); *see also* ECF 99 at 7-11. Thus, the Alliance is a prevailing

22   party. *See Natural Res. Def. Council, Inc. v. U.S. Env't l Prot. Agency*, 966 F.2d 1292, 1299 (9th Cir.

23   1992) (declaratory relief is sufficient to establish prevailing party status); *accord Steffel v.*

24   *Thompson,* 415 U.S. 452, 468–69 (1974); *accord Animal Lovers Volunteer Ass'n v. Carlucci*, 867

25   F.2d 1224, 1225 (9th Cir. 1989); *see also Baykeeper v. City of Sunnyvale*, No. 20-cv-00824-EJD,

26   2024 U.S. Dist. LEXIS 53151, at *12-14 (N.D. Cal. Mar. 25, 2024) (on motion for summary

27   judgment, because "[Plaintiff] obtained a legal conclusion that the [Defendants] violated the Clean

28   Water Act…[Plaintiff]…is a prevailing party.") (modifications added).

1    The Alliance's Complaint also sought an order "enjoining Defendant from further violating

2    the substantive and procedural requirements of Section 301(a) of the CWA, § 1311(a), for unlawful

3    and unpermitted discharges of pollutants into the Waters of the United States." ECF 49 at 15; ECF

4    173 at 18. The Court granted this relief on December 9, 2024, when it ordered MEC to, among

5    other things, apply to the State Water Resources Control Board for a Clean Water Act permit. ECF

6    167 at 1-2. The mandatory relief provided by the court here manifestly exceeds the "minor relief"

7    standard that would otherwise be sufficient to establish prevailing party status. *West Bay,* 2011 U.S.

8    Dist. LEXIS 138093, *4 (citing *St. John's*, 573 F.3d at 1059–60). There is therefore no reasonable

9    dispute that the Alliance is a prevailing party.

10    **B.  AN INTERIM AWARD OF THE ALLIANCE'S LITIGATION FEES AND COSTS IS
         APPROPRIATE BECAUSE THE ALLIANCE'S CITIZEN ENFORCEMENT ACTION**

11    **ADVANCES THE PURPOSES OF THE CLEAN WATER ACT.**

12    Once a party has prevailed, it is appropriate to award attorneys' fees and costs under section

13    505 of the Clean Water Act *unless* the non-moving party can demonstrate "special circumstances"

14    rendering reimbursement "unjust." *Resurrection Bay Conservation All.,* 640 F.3d at 1091–94

15    (overruling district court's finding of special circumstances and remanding with instructions to

16    award plaintiffs their reasonable attorneys' fees and costs). The non-moving party bears the burden

17    to make a strong showing of special circumstances, which is "extremely rare." *See Herrington,* 883

18    F.2d at 744; *St. John's*, 574 F.3d at 1062Awards of attorneys' fees and costs "should be the rule

19    rather than the exception." *St. John's*, 574 F.3d at 1062 (internal quotations and citations omitted).

20    Fee and cost recovery is well-supported here because establishing the MEC's liability

21    advances the CWA's goals of eliminating unpermitted point source discharges of pollution to

22    federally protected waterways. *See* 33 U.S.C. § 1311(a); *see Natural Res. Def. Council, Inc.*, 966

23    F.2d at 1299; *Steffel,* 415 U.S. at 468–69; *Hanson,* 859 F.2d at 316–17. Moreover, an interim award

24    furthers the purposes of the CWA's fee-shifting provision – a provision meant to encourage citizen

25    enforcement. *Hanson,* 859 F.2d at 316–17 (citing cases) ("The legislative history of the fee shifting

26    provisions indicates that they were enacted to encourage litigation to ensure proper administrative

27    implementation of the environmental statutes."); *Bradley*, 416 U.S. at 719 (noting that if private

28    attorney generals were "routinely forced to bear their own attorneys' fees, few aggrieved parties

1    would be in a position to advance the public interest").

2         An award of interim fees is also warranted "to maintain an equal position among the parties

3    and to ensure that plaintiffs can continue actively pursuing the litigation. Otherwise, defendants

4    could attempt to prevail through a war of attrition." *Golden Gate Audobon Soc., Inc. v. United*

5    *States Army Corps of Engineers*, 732 F. Supp. 1014, 1021 (N.D. Cal. July 31, 1989). The Alliance

6    is a non-profit organization, and over the past *four and a half years*, has supported this litigation

7    through grants, donations, and contingency-fee legal services. Hunt Decl. ¶ 60. *See Earth Island*

8    *Inst.,* 92 F. Supp. 2d at 1066 (plaintiff's status as non-profit environmental group with contingency

9    attorneys that "self-funded" enforcement efforts were important factors for interim fees and costs).

10   Costs related to this litigation include investigation (*e.g.*, California Public Records Act requests),

11   sampling, experts, depositions, transcripts, and travel. *See* Hunt Decl., ¶¶ 57-59 and Exhibits 2-16.

12   Further, the Alliance will continue to expend funds in the next phase of this litigation related to

13   owner/operator liability and penalties. *See* Hunt Decl., ¶ 60. An interim award of the Alliance's

14   attorneys' fees and costs is appropriate and necessary to prevent unnecessary hardship to the

15   Alliance and its counsel. *See Bradley,* 416 U.S. at 723 (delay alone in award of fees is a substantial

16   hardship); *see also Earth Island Inst.,* 92 F. Supp. 2d at 1066.

17
18        **C.  THE FEES AND COSTS THE ALLIANCE SEEKS TO RECOVER FOR INITIATING AND
           LITIGATING ITS ENFORCEMENT ACTION AGAINST MEC ARE REASONABLE.**

19        A party that is entitled to recover attorneys' fees may recover all reasonable fees, which is

20   the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.

21   *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). In addition, a party can recover reasonable

22   expenses. *Keithley v. Homestore.com, Inc.,* 2009 U.S. Dist. LEXIS 2720, at *28 (N.D. Cal. Jan. 7,

23   2009). The Alliance's requested attorneys' fees and costs were reasonably and necessarily incurred

24   and should, therefore, be appropriately awarded in full.

25        When deciding if fees are reasonable, the Eastern District Local Rules consider many of the

26   same factors as Federal case law. The Alliance's counsels' declarations and exhibits, as well as the

27   briefing below, explain the amount of fees sought in sufficient detail, the time and labor required by

28   each of the Alliance's counsel, the novelty and difficulty of the legal and factual questions

9

1    presented, the skill required to prosecute the case, the customary fee charged in matters of this

2    nature, the experience, reputation, and ability of the Alliance's counsel, the nature and length of the

3    Alliance's relationship with counsel, awards in similar actions, and the fact that the Alliance's

4    counsel assumed responsibility for this case on a contingency basis. *See* E.D. Cal. L.R. 293.

5        Generally speaking, hours are reasonable if they were "reasonably expended in pursuit of

6    the ultimate result achieved in the same manner that an attorney traditionally is compensated by a

7    fee-paying client for all time reasonably expended on a matter." *Hensley,* 461 U.S. at 431; *see*

8    *also Vargas v. Howell,* 949 F3d 1188, 1194, 1198 (9th Cir. 2020) (fees may include time spent on

9    "dead-ends" and unfiled motions); *Roberts v. City & County of Honolulu,* 938 F3d 1020, 1026 (9th

10   Cir. 2019) ("court should consider in light of the entire record whether a reasonable attorney with

11   his client's interests in mind would have" performed the claimed work); *Irvine Unified Sch. Dist. v.*

12   *K.G.*, 853 F3d 1087, 1095 (9th Cir 2017) (hours billed must be "truly the result of advocacy

13   reasonably calculated to advance [the client's] interests").

14       This begins with a review of the billing records. *Hensley,* 461 U.S. at 431; L.R. 293(c)(1).

15   Here, the Alliance's counsel maintained contemporaneous time records reflecting each hour and

16   activity required to prosecute this action. Flanders Decl., Exhibit 1. Counsel's billing records are

17   sufficiently detailed to demonstrate that these are hours "reasonably expended in pursuit of the

18   ultimate result achieved." *See Hensley,* 461 U.S. at 431; Flanders Decl., Exhibit 1. In addition,

19   counsel have carefully reviewed each entry and exercised billing judgment, reducing the number of

20   hours actually incurred by 13.55% for recovery by this motion. Flanders Decl., ¶¶ 42-44. *See*

21   *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir 2008) ("By and large, the court should

22   defer to the winning lawyer's professional judgment as to how much time he was required to spend

23   on the case; after all, he won, and might not have, had he been more of a slacker"); *Fair Hous. of*

24   *Marin v. Combs,* 285 F3d 899, 908 (9th Cir 2002) (noting that counsel "exercised considerable

25   billing judgment," and finding counsel's hours justified by "quality" of papers, amount of "research

26   they evidence," and "detailed and fact-specific work" required to prepare them).

27

28

1.  <u>The Time Spent Initiating the Alliance's Factually and Legally Complex
    Citizen Enforcement Action is Reasonable and Recoverable.</u>

The Alliance was required to spend considerable time investigating and initiating this action.
First, developing this action required the Alliance to conduct multiple site inspections at the MEC
Facility, portions of the Unnamed Stream adjacent to and downstream from the MEC Facility, and
the Cosumnes River. Hunt Decl., ¶ 36. Counsel for the Alliance evaluated the findings of these
investigations prior to drafting and sending the 60-day CWA Notice Letter and drafting and filing
the Complaint. *See* Flanders Decl., ¶¶ 26-27; Declaration of Erica Maharg in Support of Motion for
Interim Award of Fees and Costs (hereafter "Maharg Decl."), ¶¶ 35-38. These activities are
compensable. *See Webb v. Cnty. Bd. of Educ.*, 471 U.S. 234, 243 (1985) ("Most obvious examples
are the drafting of the initial pleadings and the work associated with the development of the theory
of the case."); *Sierra Club v. U.S. Envt'l Prot. Agency,* 625 F. Supp. 2d 863, 871 (N.D. Cal. 2007)
(discussing importance of background research to develop theory of the case); *see also Golden Gate
Audubon Soc.,* 732 F. Supp. at 1018 (awarding fees for pre-litigation case development).

2.  <u>Time Spent Litigating the Alliance's Factually and Legally Complex Citizen
    Enforcement Action is Reasonable and Recoverable.</u>

The Alliance and its counsel incurred considerable time to prevail on two motions for
summary judgment and two motions to amend the complaint, among other motions. *See* Flanders
Decl., ¶¶ 35 & Exhibit 1. All such time incurred was reasonably necessary in light of the complexity
of the issues, MEC's litigation tactics, and the excellent results achieved.

First, the Alliance conducted thorough discovery to gather facts and evidence necessary to
succeed on both the Phase I and Phase II summary judgment motions. *See* Hunt Decl., ¶¶ 35, 37-38,
42, 45, 50; Flanders Decl., ¶¶ 33-35, 40-41; Declaration of J. Thomas Brett in Support of Motion
for Interim Award of Fees and Costs (hereafter "Brett Decl."), ¶¶ 12 & 44-58; Declaration of
Christopher Hudak in Support of Motion for Interim Award of Fees and Costs (hereafter "Hudak
Decl"), ¶¶ 10-11 & 16; Declaration of Harrison Beck in Support of Motion for Interim Award of
Fees and Costs (hereafter "Beck Decl."), ¶ 13; Maharg Decl., ¶¶ 40-46. Counsel for the Alliance
propounded and responded to over *twenty different sets* of discovery requests, reviewed well over

122,000 pages of written production from MEC, thousands pages of materials produced by State and local government agencies pertaining the MEC Facility (Brett Decl., ¶ 63) took or defended twelve depositions – including depositions of Plaintiff's expert Ian Wren *four* times (Declaration of Ian Wren in Support of Plaintiff's Motion for Award of Interim Fees and Costs (hereafter "Wren Decl."), ¶ 18) –  and conducted three Rule 34 site inspections at the Facility (two during wet weather, one during dry weather). In addition, Plaintiff's counsel directed or participated in seven inspections of the areas around the MEC Facility to collect photographs, and samples of stormwater discharges leaving Facility boundaries and at the confluence of the Unnamed Stream and the Cosumnes River. *See* ECF Nos. 81-4 at ¶¶ 3-5; and 116 at ¶ 18. Plaintiff's counsel also oversaw the preparation of three expert reports. Flanders Decl., ¶¶ 31; Hunt Decl., ¶¶ 37, 40, 45; Brett Decl., ¶¶ 53-55; Maharg Decl., ¶ 49. All of Counsel's work through discovery was reasonably necessary to prove the following essential (and complex) elements of the case:

- The Alliance has standing to maintain this case, which Defendants vigorously opposed with their own separate Motion for Summary Judgment, and which involved proving that MEC's pollutants reach the Cosumnes River Preserve *19 miles* downstream of MEC (ECF 99 at 8-9; ECF 81 at 20-21; ECF 81-4 at ¶¶ 85-107; ECF 86 at 21:17-27; ECF 89 at 9:2-15), and that the Alliance's members' use and enjoyment of this environment is regular, germane to its mission, and harmed by MEC (ECF 99 at 5-9; ECF 81 at 29-30; ECF 86 at 13-30; ECF 89 at 12-16);

- The Unnamed Stream is a water of the United States, which involved proving with legal analysis and expert testimony that the waterway qualified even under the Supreme Court's more recent and stringent test in *Sackett*;

- MEC generates and discharges pollutants through its storm drain and pipes into the Unnamed Stream and into the Cosumnes River (ECF 99 at 8-9; ECF 81 at 17-18; ECF 89 at 7-8), which involved proving through documentary evidence and deposition testimony the path of flow in the on-site storm drainage system, outfalls from this system, and sources of pollutants and concentrations of pollutants in the discharges;

- MEC's discharges from the Facility to the Cosumnes River are the "functional equivalent" of a point source discharge to WOTUS (ECF 81 at 18-20), which involved proving with documentary evidence, sampling and investigation, and deposition testimony that pollutants discharged from MEC to the unnamed stream reached the Cosumnes River applying the seven factors identified on *County of Maui* (*Cty. of Maui v. Haw. Wildlife Fund*, 590 U.S. 165, 183 (2020));[2]

- The equestrian Facility is a CAFO (ECF 158 at 15-17; ECF 115 at 12-17; and ECF 140 at 8-14), which involved proving with documentary evidence, deposition testimony, and investigations that the specific areas of the Facility where horses are confined, stabled, fed, and maintained discharges pollutants into waters of the United States;

- The Rancho Murieta Community Services District ("RMCSD"), which maintains an easement to operate a portion of the Unnamed Stream as a municipal stormwater drainage, and which investigated MEC's stormwater management practices, does not have regulatory oversight of MEC in a manner that constitutes a CWA permit (ECF 116-001 at 253-265 & 296-301; ECF 82-3 at 310 (Paulsen Dep. 58:4-7)), which involved proving by documentary evidence and deposition testimony that RMCSD oversight is independent of any separate regulatory requirements that MEC must meet;

- The anticipated cost of compliance for MEC should a permit be obtained, which involved proving through documentary evidence, expert analysis, and deposition testimony the potential costs of implementing pollution prevention measures that would be necessary to comply with federal and state regulations applicable to the MEC Facility (Flanders Decl., at ¶ 31; ECF 158 at 6:22-7:5, 9:25-10:7);

---

[2] Plaintiff argued the *County of Maui* Factors as an alternative theory of liability. *See* ECF 81 at 18-20. Though the Court did not decide the issue, Plaintiff's decision to both brief this issue and offer expert testimony on the same was reasonable and prudent given the question at issue in Phase I of whether MEC had discharged pollutants to WOTUS and in light of the *Sackett v. EPA* case, which was pending before the Supreme Court at the time of Plaintiff's Motion. ECF 75 at 6:21-23.

PLAINTIFF'S MOTION FOR INTERIM AWARD OF FEES AND COSTS

- The economic benefit of non-compliance and the monies saved by MEC through years of non-compliance, which involved proving through documentary evidence, expert analysis, and deposition testimony the amount of money MEC saved and the value of that money which was available for MEC to use for other purposes over the years of noncompliance (Flanders Decl., at ¶ 31);

These processes necessarily required significant expenditures of time. Hunt Decl., ¶¶ 34-56; Flanders Decl., ¶¶ 30, 37-38 & Exhibit 1; Brett Decl., ¶¶ 12 & 44-58; Hudak Decl., ¶¶ 10-11 & 16; Beck Decl., ¶ 13; Maharg Decl., ¶¶ 40-46. The Alliance's time spent on these tasks is reasonable in light of the result the Alliance has now achieved—establishing that MEC is liable for CWA violations and securing injunctive relief requiring MEC to apply for a permit and comply with Best Management Practices imposed by the court. *See* ECF Nos. 99 at 6-11 (Phase I Order); 158 at 15-18 (Phase II Order); 167 at 1-2 (injunctive relief Order). Further, the discovery and effort preparing to seek specific penalties for violations was reasonable and necessary since once liability is established, penalties are mandatory, and the Phase II discovery period was the Court-ordered time to develop this evidence. Flanders Decl., ¶ 37.

The Alliance successfully briefed these complex issues and successfully opposed MEC's Phase I Motion for Summary Judgment, which incorrectly argued that the Alliance lacked Article III standing. *See* ECF 99 at 6-9. In addition to MEC's standing arguments, the Alliance's counsel had to defend against MEC's litigation positions, including that: the Facility did not discharge pollutants to a water of the United States (Nos. 99 at 6-11; 158 at 12-14); the Facility did not constitute a CAFO (ECF 158 at 15-17); and MEC's discharges were permitted by virtue of the Rancho Murieta Community Services District's permit. ECF 158 at 17-18.

This matter plainly presented novel and difficult legal questions. No published opinion had previously found an equestrian event facility such as MEC to be a CAFO. Moreover, the already complex rules regarding waters of the United States changed over the course of the case with the Supreme Court's holding in *Sackett v. Environmental Protection Agency* requiring supplemental briefing on the same. Similarly, MEC requested and was granted leave for supplemental briefing following *Loper Bright Enterprises, et al. v. Raimondo*, which overruled the *Chevron* doctrine. The

1    Alliance prevailed on all of the above.[3]

2         Aside from the Parties' respective motions for summary judgment, the Alliance also

3    successfully: moved for leave to file a second and third amended complaint (ECF Nos. 48 and 158)

4    – which were filed following MEC's refusal to stipulate to the amendments (Flanders Decl., ¶¶ 33,

5    40; moved to amend the scheduling order (ECF 112), again following MEC's refusal to stipulate

6    (Brett Decl., ¶ 22)); and opposed MEC's motion to stay. ECF 79. These motions were reasonable

7    and necessary owing to changes in law and fact that arose over the course of the case.

8         In sum, at every turn, MEC vigorously defended itself and raised legal defenses (whether

9    justified or not) that required Plaintiff to prove a variety of complex facts to establish liability. The

10   Alliance responded to MEC's litigation tactics appropriately and prevailed in each of the motions

11   heard by the Court. MEC "cannot litigate tenaciously and then be heard to complain about the time

12   necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11

13   (1986). Once the fee applicant has provided evidence supporting the hours worked, "[t]he party

14   opposing the fee application has a burden of rebuttal that requires submission of evidence to the

15   district court challenging the accuracy and reasonableness of the hours charged or the facts asserted

16   by the prevailing party in its submitted affidavits." *Gates v. Deukmejian,* 987 F.2d 1392, 1397–98

17   (9th Cir. 1992). Here, the hours expended on this case are reasonable in light of the complex subject

18   matter, Defendant's tactics, the excellent results achieved, and Plaintiff's billing judgment.

19              3.   The Alliance achieved excellent results

20        Next, courts and Local Rules factor in the results obtained to determine the reasonableness

21   of the fees and costs requested. Here, Plaintiff's counsel achieved a complete and total victory:

22   MEC was found liable for CWA discharge violations (ECF 99 at 6-11; and ECF 158 at 15-18), and

23   in accordance with the Court's injunction, has applied for a CWA permit. *See* ECF Nos. 170 at 1-2;

24   181; *c.f.*, *O'Bannon v. NCAA*, 114 F. Supp. 3d 819, 830 (N.D. Cal. 2015) (plaintiffs achieved

25

26   _____

27   [3] *See* ECF Nos. 93 (MEC requesting supplemental briefing on *Sackett*); 145 (MEC requesting
     supplemental briefing on *Loper Bright*); 94 & 147 (Orders granting request for supplemental
28   briefing); 96 & 151 (MEC's supplemental briefing on *Sackett* and *Loper Bright*, respectively); and
     95 & 152 (the Alliance's supplemental briefing on *Sackett* and *Loper Bright*, respectively).

15

1  excellent results in obtaining permanent injunction); *Arriola v. Kentucky*, 2018 U.S. Dist. LEXIS

2  210299, at *10 (E.D. Ky. Dec. 13, 2018) (holding on motion for interim fees that "full recovery is

3  appropriate because Plaintiffs have achieved 'excellent results' by succeeding on their injunctive

4  and declaratory relief"). Other than establish the *amount* of penalties owed, Plaintiff has obtained

5  everything it set out to do in filing this case.

6          4.  <u>MEC Needlessly Multiplied the Alliance's Fees and Costs.</u>

7        MEC persistently maintained clearly meritless defenses and arguments. For example, MEC

8  contested whether it discharged *any* pollutants to the Unnamed Stream even though its own expert

9  admitted otherwise. ECF 83-6 at 21; 116-2 at 43; 82-1 at 195-96;81-1 at 16 (SUF No. 59).

10  Likewise, MEC forced the Alliance to prove MEC's pipes were point sources, even though "pipe"

11  is included within the definition of "point source." 33 U.S.C. § 1362(12); ECF Nos. 87 at 20-21, 89

12  at 7-8. MEC sought to challenge the validity of EPA CAFO regulations based on the *Loper Bright*

13  decision despite the plain language of 33 U.S.C. § 1369(b)(1) & (2), which bars such challenges in a

14  civil enforcement action such as the one at bar and imposes a strict 120-day statute of limitations for

15  such challenges (which had passed by the time MEC raised this issue). *See* ECF 158 at 21. For

16  *years* MEC maintained that its discharges were covered by a Rancho Murieta Community Services

17  District Small MS4 Permit, with no from the MS4 Permit itself, no support in case law, and

18  numerous contrary cases. ECF 158 at 17-18; ECF 115 at 17-21. MEC further challenged the

19  Alliance's right to conduct site inspections pursuant to Federal Rule of Civil Procedure 34, which

20  forced the Alliance resort to informal dispute resolution with the Court in April, 2022 to conduct a

21  wet weather inspection, and also to draft and submit a second joint statement for informal dispute

22  resolution regarding a separate inspection in November, 2023. Flanders Decl., ¶¶ 31 ECF 53 and

23  ECF 107. MEC also vigorously contested and stymied Plaintiff's multiple attempts to depose Carol

24  Anderson Ward. Flanders Decl., ¶ 30; Brett Decl., ¶¶ 50-51. *See also* ECF 158 at 6:24-28.

25        Finally, MEC refused to settle these claims over the course of three mediation sessions (in

26  2021, 2022, and 2024 [multiple days]) even after the complex issues related to WOTUS and

27  standing were resolved by the court. ECF 38 & 65; Flanders Decl., ¶ 45; Hunt Decl., at Exhibit 10

28  (showing mediation costs). MEC now faces large fees and costs that are, in large part, its own fault.

1    *Riverside v. Rivera,* 477 U.S. 561, 580 (1986).

2              5.    The Costs Associated with Plaintiff's Expert Testimony Incurred through
3                    Phase II Summary Judgment Are Reasonable and Recoverable.

4         Expert witness costs are recoverable under the fee-shifting provision of the Clean Water

5    Act. 33 U.S.C. § 1365 (d); *see also Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy,*

6    2001 U.S. Dist. LEXIS 3579, at \*61–\*62 (E.D. Wash. Feb. 27, 2001) ("*Bosma Dairy I*"). Expert

7    testimony is important in complex Clean Water Act cases. *Bosma Dairy I,* 2001 U.S. Dist. LEXIS

8    3579, at \*62. Whether expert costs are reasonable is an inquiry separate from the reasonableness of

9    attorneys' fees and depends upon the relevance of the expert's testimony to the successful claims

10   and the utility to the court. *Id*. at \*61–\*62.

11        The Alliance's hydrology expert, Ian Wren, provided key litigation support to the Alliance

12   during motion practice and discovery. *See* Flanders Decl., ¶¶ 30-31; Wren Decl., ¶¶ 9-20. Mr. Wren

13   holds a Masters in Science in Hydrology from Imperial College London and a Bachelor of Arts in

14   Integrative Biology from U.C. Berkeley. ECF 82-1 at 117. Mr. Wren is a Certified Professional in

15   Stormwater Quality, a California Construction General Permit Qualified Stormwater Pollution

16   Prevention Place Developer, and a California Industrial General Permit Qualified Industrial Storm

17   Water Practitioner. ECF 81-4 at 75-76 (Wren Declaration in Support of Phase I Motion for

18   Summary Judgment); ECF 82-1 at 116-117 (Wren Resume). Mr. Wren has over 20 years of

19   experience with stormwater and non-stormwater monitoring, industrial and municipal stormwater

20   permitting and compliance, and implementation of stormwater and non-stormwater runoff pollution

21   controls. ECF 82-1 at 116-117.

22        Mr. Wren was present at and conducted sampling during each of the Alliance's Rule 34

23   inspections, conducted observations and collected water samples at the confluence of the Cosumnes

24   River and the Unnamed Stream on multiple occasions, and prepared three expert reports, which

25   included, *inter alia*, Mr. Wren's opinions on the hydrological characteristics of the Unnamed

26   Stream, pollutant loads discharged from the MEC Facility, and concentrations of pollutants

27   discharges from the Facility that reach the Cosumnes River and Cosumnes River Preserve. ECF 81-

28   4 ¶ 12 (Wren Declaration summarizing expert opinions), ECF. 82-1 at 2-114 (Wren expert reports).

1  Mr. Wren generated declarations in support of the Alliance's pleadings, submitted expert reports,

2  and was deposed by MEC on *four* occasions. S*ee e.g.*, ECF 81-4 ¶ 12; ECF 82-1 at 2-114; Wren

3  Decl., ¶ 18. The Court relied on Mr. Wren's testimony to find that the Unnamed Stream is a water

4  of the United States. ECF 99 at 10:23-11:4. The Court further relied on Mr. Wren's testimony to

5  determine that the MEC Facility discharges pollutants into the Unnamed Stream and the Cosumnes

6  River. ECF 99 at 8:11-9:9, & 10:26-28. This was essential to the Alliance's success.

7         The Alliance also retained experts Timothy Simpson and Jonathan Shefftz. Flanders Decl., ¶

8  31. Mr. Simpson prepared an expert report setting forth his opinions regarding, *inter alia*, the

9  anticipated cost of compliance for MEC should a permit be obtained. *Id.* Mr. Shefftz, furthermore,

10  prepared an expert report setting forth his opinions regarding, *inter alia* the economic benefit to

11  MEC of non-compliance and the monies saved by MEC through years of non-compliance. *Id.* Both

12  the economic impact and economic benefit to defendant are relevant considerations in determining

13  penalties (*see* 33 U.S.C. § 1319(d)) and are therefore, reasonably included within Plaintiff's Phase

14  II work. ECF 41 (Phase II encompasses the issue of remedies). *See Bosma Dairy I,* 2001 U.S. Dist.

15  LEXIS 3579, at *62 (reasoning that no reduction in expert fees incurred is warranted, even where

16  plaintiffs did not yet prevail on every issue, given the importance of expert testimony in a complex

17  Clean Water Act cases).

18         Given the import of the testimony of Plaintiff's experts, and where the Court's finding that

19  Mr. Wren in particular provided reliable and relevant testimony, the Alliance is entitled to recover

20  these reasonable expert costs incurred through the motion for summary judgment, which totals

21  $124,612.04. Hunt Decl. ¶ 57.

22              6.  The Other Costs Requested Are Typically Incurred and Are Recoverable.

23         The other litigation expenses the Alliance seeks total $1,509.38, which includes the costs to

24  investigate and pursue this enforcement action against MEC through summary judgment. *See* Hunt

25  Decl., ¶¶ 57-59 and Exhibits 2-16. The majority of these costs are for sampling, including

26  laboratory analysis, and travel to and from depositions, sampling events, and site inspections. Hunt

27  Decl., ¶¶ 57-59 and Exhibits 2-16. The other costs are typical out-of-pocket expenses normally

28  charged to a paying client, are recoverable, and were necessarily incurred. Hunt Decl., ¶¶ 57-59; *In*

1   *re Immune Responses Secs. Litigation,* 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (costs

2   transportation; photocopies; postage; filing fees; messenger and overnight delivery; experts,

3   consultants, and investigators; and mediation fees recovered as reasonable and necessary). The

4   Alliance's costs are reasonable and reimbursable and should therefore be properly awarded in full.

5                    D.  **THE ALLIANCE'S ATTORNEYS' RATES ARE REASONABLE.**

6           The attorney fee rates sought herein are consistent with prevailing rates in the Eastern

7   District of California. *See Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984); *United Steelworkers of*

8   *Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs'

9   attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations

10  in other cases . . . are satisfactory evidence of the prevailing market rate"). In setting hourly rates,

11  Plaintiff's counsel reviewed the hourly rates charged by other lawyers of reasonably comparable

12  skill, experience, and reputation in the Eastern District of California. Flanders Decl., ¶¶ 15-16, 18-

13  20. As early as 2012, "[p]revailing rates in the Eastern District of California are in the $400 range,

14  with rates of up to $650 to $675 approved for partners and senior associates with significant years

15  of experience." *Franco v. Ruiz Food Prods.*, 2012 U.S. Dist. LEXIS 169057, at *55 (E.D. Cal.

16  2012); *see also*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452-53 (E.D. Cal. 2013)

17  (awarding $400/hour to attorney with 5 years of experience; $560/hour to attorney with 8 years of

18  experience; $720/hour to attorney with 21 years of experience); *Garcia v. Gordon Trucking, Inc.*,

19  2012 U.S. Dist. LEXIS 160052, at *9 (E.D. Cal. 2012) (prevailing hourly rates in the Fresno

20  division of the Eastern District of California in the $400 range, and up to $650 to $675 for partners

21  and senior associates with significant experience); *Bond v. Ferguson Enters.*, 2011 U.S. Dist.

22  LEXIS 70390, at *9 (E.D. Cal. 2011) ($675/hour appropriate for partner with over 20 years of

23  experience and $261/hour appropriate for associate with 2 years of experience); *Doe v. Cty. of*

24  *Sacramento*, 2024 U.S. Dist. LEXIS 83141 at *7, (E.D. Cal. 2024) ("the hourly rate of $425.00 . . .

25  is reflective of the prevailing market rate within the Eastern District of California, Sacramento

26  Division, for similar services by lawyers of reasonably comparable skill" for attorney with four

27  years of experience). These collected cases span 2011-2024, over which time market rates have

28  increased due to inflation. *See Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 583-4 (2004)

1  (approving a regular "percentage adjustment" during "an inflationary era"); *Perdue v. Kenny A*, 559

2  U.S. 542, 555 (2010); *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Moreno*, 534 F.3d at 1115;

3  *Valdivia v. Brown*, 848 F. Supp. 2d 1141, 1143 (E.D. Cal. 2011). Similarly, Plaintiff's counsel were

4  awarded market rates in Sacramento Superior Court in 2018 which, adjusted for inflation, generally

5  exceed the rates sought in the instant motion. *See* Flanders Decl. ¶¶ 20-21. The rates provided

6  herein thus reflect and compensate for recent inflation during the pendency of this litigation.

7      In addition, Plaintiff retained the services of Richard Drury, a highly experienced public-

8  interest environmental litigator in California, to opine on the reasonableness of Plaintiff's requested

9  rates. Mr. Drury has determined that the rates requested are reasonable given the context of this case

10  and the relative experience of Plaintiff's counsel. Drury Decl. ¶¶ 43.

11      The Alliance also requests the recovery of legal support staff and paralegal time at $218 per

12  hour. *See* Flanders Decl., ¶ 17. These rates are reasonable, and this time is recoverable. *See*

13  *Missouri v. Jenkins,* 491 U.S. 274, 285–286 (1989) (paralegal service is a recoverable fee and

14  paralegal rate is reasonable when charged at prevailing market rate).

15                            **V.   CONCLUSION**

16      Having achieved a complete victory establishing MEC's liability and securing permanent

17  injunctive relief, the Alliance is a prevailing party and now seeks to recover its fees and costs

18  incurred in the course of establishing MEC's liability, totaling $1,713,697.60 in reasonable

19  attorneys' fees (*after* removing $218,368 through billing judgment) and $126,975.17 for expert fees

20  and costs. These claims are fully supported in fact, and law, and the motion should be granted.

21

22                              Respectfully submitted,

23  Dated: April 18, 2025                AQUA TERRA AERIS LAW GROUP

24                              /s/ Jason R. Flanders
                                Jason R. Flanders
25                              Attorneys for Plaintiff
                                CALIFORNIA COASTKEEPER ALLIANCE
26

27

28